DAVIS, tax assessor, *et al. v.* PENN MUTUAL LIFE INSURANCE COMPANY.

No. 14902. October 13, 1944. Rehearing denied November 22, 1944.

*Harold Sheats, Standish Thompson,* and *W. S. Northcutt,* for plaintiffs in error.

*Grover Middlebrooks* and *Alston, Foster, Sibley & Miller,* contra.

PRATT, Judge. ■ This suit was filed on October 22, 1937, and does not involve the amendment to art. VII, sec. II, par. I of the State constitution (Code, § 2-5001), adopted in 1937, and laws enacted pursuant thereto relating to taxes on intangibles. The question here presented must be determined under applicable provisions of the constitution and laws of this State as they existed before such constitutional amendment and statutes made thereunder. Counsel for the plaintiffs in error insist only on their general demurrer. Therefore the sole question to be determined is the taxability in Fulton County of the credits involved for the years 1931 through 1937. The constitutional provision above referred to and of force during the period involved in the instant case is: "All taxation shall be uniform upon the same class of subjects and ad valorem on all property subject to be taxed within the territorial limits of the authority levying the tax." It is the contention of counsel for the plaintiffs in error that the State constitution can not limit by implication the power of the State to tax, but any such limitation must be declared in clear and unambiguous terms; that, since there is no contrary constitutional restraint, the State's power of taxation extends to "all subjects over which the State is capable of demonstrating the practical fact of its power through its laws operating territorially within the State." We are clear that it is not essential to the existence of the rule precluding the State from taxing property without its territorial limits that express language to this effect shall be in the organic law. This principle is declared in Cooley on Taxation (4th ed.), § 86, in the following language: "Great as is the sovereign power of any government to levy and collect taxes from its citizens, that power in a constitutional country has very distinct and positive

limitations. Some of them inhere in its very nature, and exist, whether declared or not declared in the written constitution; but some of them it is not uncommon to specify, either out of abundant caution, or to keep them fresh in the minds of those who administer government. Other limitations spring from the peculiar form of our government, and from the relation of the States to the national authority. What may be called inherent limitations on the power to tax include . . the want of power to tax property outside the territorial limits." There is no power under the constitution to tax property outside the State's territorial jurisdiction. The lack of extraterritorial power inheres in our Federal system, where the separate States and the people within them have surrendered a portion of sovereignty to the national government. It is well established that States, having entered into the Union, are not now possessed of external sovereignty. It has been stated that the reason for this rule is that to allow a State extraterritorial jurisdiction would be to take from the jurisdiction of a sovereign sister State, and the States are equal. In re C. A. Taylor Logging Co., 28 Fed. 2d, 526, 529. It was declared in Pennoyer v. Neff, 95 U. S. 714, 722 (24 L. ed. 565), that "Every State possesses exclusive jurisdiction and sovereignty over persons and property within its territory. . . No State can exercise direct jurisdiction and authority over persons or property without its territory." It is stated in 59 C. J. 21, that, "In the absence of any particular agreement or of particular provisions in the acts of admission varying the ordinary rules, the jurisdiction of a State is coextensive with its boundaries, extending throughout its territorial limits and operating upon all the persons and things there, and, conversely, limited to its own territorial limits and not extending beyond its boundaries." The following from Cooley on Taxation (4th ed.), § 92, is to the same effect: "The political jurisdiction of a State does not extend beyond its territorial limits, and therefore it can not lawfully impose a tax upon persons, natural or artificial, or property, residing or situated beyond such limits. A State cannot tax where it has jurisdiction over neither the owner nor the property. In such a case the State affords no protection, and there is nothing for which taxation can be equivalent."

The opposing views on this question of the power of a State to

tax intangible credits owned by non-residents against resident debtors have converged on this point of territorial jurisdiction. The contending armies of argument still clash on this battle line. It may be confidently asserted that the side which wins this battle wins the final victory—that it is decisive. This conflict arises doubtless from the peculiar nature of intangible properties, and the shrinking of the elements of time and space in commercial and business transactions, now so largely interstate, due to modern means of communication and transportation. This was commented on in Curry v. McCanless, 307 U. S. 357, 365 (59 Sup. Ct. 900, 83 L. ed. 1339, 123 A. L. R. 162), as follows: "Very different considerations, both theoretical and practical, apply to the taxation of intangibles, that is, rights which are not related to physical things. Such rights are but relationships between persons natural or corporate, which the law recognizes by attaching to them certain sanctions enforceable in courts. The power of government over them and the protection which it gives them cannot be exerted through control of a physical thing. They can be made effective only through control over and protection afforded to those persons whose relationships are the origin of the rights. See Chicago, R. I. & P. R. Co. v. Sturm, 174 U. S. 710, 716 (19 Sup. Ct. 797, 43 L. ed. 1144); Harris v. Balk, 198 U. S. 215, 222 (25 Sup. Ct. 625, 49 L. ed. 1023, 3 Ann. Cas. 1084). Obviously, as sources of actual or potential wealth—which is an appropriate measure of any tax imposed on ownership or its exercise—they cannot be dissociated from the persons from whose relationships they are derived. These are not in any sense fictions. They are indisputable realities. The power to tax 'is an incident of sovereignty, and is coextensive with that to which it is an incident. All subjects over which the sovereign power of a State extends, are objects of taxation; but those over which it does not extend, are, upon the soundest principles, exempt from taxation.' McCulloch v. Maryland, 4 Wheat. 316 (4 L. ed. 579). . . From the beginning of our constitutional system, control over the person at the place of his domicile and his duty there, common to all citizens, to contribute to the support of the government, have been deemed to afford an adequate constitutional basis for imposing on him a tax on the use and enjoyment of rights in intangibles measured by their value. Until this moment that jurisdiction has not

been thought to depend on any factor other than the domicile of the owner within the taxing State, or to compel the attribution to intangibles of a physical presence within its territory, as though they were chattels, in order to support the tax." In New York ex rel. Cohn *v.* Graves, 300 U. S. 308, 313 (57 Sup. Ct. 466, 81 L. ed. 666, 108 A. L. R. 721), it was said: "The tax, which is apportioned to the ability of the taxpayer to pay it, is founded upon the protection afforded by the State to the recipient of the income in his person, in his right to receive the income, and in his enjoyment of it when received. These are rights and privileges which attach to domicile within the State." As was said in First Bank Stock Corp. *v.* Minnesota, 301 U. S. 234, 240 (57 Sup. Ct. 677, 81 L. ed. 1061, 113 A. L. R. 228), "The rule that property is subject to taxation at its situs, within the territorial jurisdiction of the taxing State, readily understood and applied with respect to tangibles, is in itself meaningless when applied to intangibles which, since they are without physical characteristics, can have no location in space. See Wheeling Steel Corp. *v.* Fox, 298 U. S. 193, 209 (56 Sup. Ct. 773, 80 L. ed. 1143). The resort to a fiction by the attribution of a tax situs to an intangible is only a means of symbolizing, without fully revealing, those considerations which are persuasive grounds for deciding that a particular place is appropriate for the imposition of the tax. Mobilia sequuntur personam, which has won unqualified acceptance when applied to the taxation of intangibles, . . states a rule without disclosing the reasons for it. But we have recently had occasion to point out that enjoyment by a resident of a State of the protection of its laws is inseparable from responsibility for sharing the costs of its government, and that a tax measured by the value of the rights protected is but an equitable method of distributing the burdens of government among those who are privileged to enjoy its benefits. . . The economic advantages realized through the protection, at the place of domicile, of the ownership of rights in intangibles, the value of which is made the measure of the tax, bear a direct relationship to the distribution of burdens which the tax effects. These considerations support the taxation of intangibles at the place of domicile, at least where they are not shown to have acquired a business situs elsewhere, as a proper exercise of the power of government. Like considerations support their taxation

at their business situs, for it is there that the owner in every practical sense invokes and enjoys the protection of the laws, and in consequence realizes economic advantages of his ownership." While it may be that some of these views have been modified by later adjudications of the United States Supreme Court, they are regarded by this court as sound and applicable here.

Taxes are levied on assets, not on liabilities. They are assessed against that which, according to universal practice and custom, is entered on bookkeeping records in black ink, not in red ink. Credits. are personal, individual property rights. They inhere in and belong to the creditor. He alone can legally enforce their conversion into money at maturity. In him the credit is an asset, entered on his bookkeeping records in blank ink. To the debtor, this class of property is not an asset but a liability. On his records it is entered in red ink. His relation to the transaction out of which the credit arises is entirely different from that of the other party thereto. Since this intangible property right is personal to the creditor, is property only in him, and only he can legally compel the debtor to change this property from an intangible credit to tangible money or property for the creditor's benefit, it has been in this country the all but unanimous rule to regard such intangibles as located at the domicile of the owner for the purpose of ad valorem taxation. As stated in Cleveland &c. R. Co. v. Pennsylvania, 15 Wall. 300 (21 L. ed. 179), "But debts owing by corporations, like debts owing by individuals, are not property of the debtors in any sense; they are obligations of the debtors, and only possess value in the hands of the creditors. With them they are property, and in their hands they may be taxed. To call debts property of the debtors, is simply to misuse terms. All the property there can be, in the nature of things, in debts of corporations, belongs to its creditors, to whom they are payable, and follows their domicile, wherever that may be. Their debts can have no locality separate from the parties to whom they are due. This principle might be stated in many different ways, and supported by citations from numerous adjudications, but no number of authorities and no forms of expression could add anything to its obvious truth, which is recognized upon its simple statement." The only exception to this rule of which we are aware is the business situs doctrine. This exception has now become firmly estab-

lished in the tax law of this country. It has been recognized and applied in many decisions of the United States Supreme Court, beginning with New Orleans *v.* Stempel, 175 U. S. 309 (20 Sup. Ct. 110, 44 L. ed. 174).

Counsel for the plaintiffs in error argue that the situs of credits for the purpose of taxation may be either the domicile of the debtor or the domicile of the creditor; that, if the creditor is a resident of this State, the proper tax situs is *his* domicile, but if he is a *non*-resident and the debtor a resident, the proper tax situs is the domicile of the debtor. It may be argued that the Georgia rule applicable to the taxation of stocks in domestic and foreign corporations is similar to this position; that is, that stocks in foreign corporations owned by persons domiciled in this State are taxable, whereas stocks in a domestic corporation are not taxable in this State. The reasons underlying the two cases are essentially different. The resident owner of stocks in a foreign corporation has presumably transferred some of his properties, subject to ad valorem taxation in Georgia out of the State's taxing jurisdiction, in exchange for the foreign stock. In the case of his acquiring stock in a domestic corporation, however, his property given in exchange therefor presumably remains within the taxing jurisdiction of the State. Applying the same reasoning to the taxing of credits, the opposite result is obtained. If a resident of Georgia lends money to a non-resident debtor, the money so loaned has gone beyond the taxing power of the State. The credit takes its place, and is taxable here. But if a non-resident lends money to a resident of this State, the money, or its equivalent property conversion, ordinarily becomes subject to an ad valorem property tax in this State. The economic theory is that every credit represents tangible property of intrinsic value. In some instances it may represent services. But such services generally add to the value of some tangible property, e. g., mechanical services performed on a motor vehicle. The creditor transfers money or tangible real or personal property or services to the debtor in consideration of a promise on his part to pay the creditor therefor either in money or specifics. So it may be safely assumed, in the great majority of business transactions resulting in the creation of credits, that there is a corresponding transfer of tangible property of the value of the debt thus created, which tangible property is

subject to an ad valorem property tax. Thus, if a non-resident lends $1000 in money to a resident of Fulton County, taking a note secured by deed conveying realty in Fulton County for the repayment of such loan, the State of the creditor's domicile *loses* that much from its tangible-property tax digest (considering money as tangible property), and Georgia *gains* that much. Conversely, if a resident of Georgia lends money to a non-resident, Georgia loses from the tax digest the money, but the credit takes its place for the purpose of taxation. Where a loan is made by one resident to another, it might be claimed that such reasoning is not sound, that under our tax laws we would have two taxable dollars by such transaction where we had only one before. It will not be denied, however, that both the money loaned and the note taken for its repayment are property. Both have value. Both are subject to an ad valorem property tax. If both the debtor and the creditor are residents of the same county, then generally that county would have jurisdiction of both properties for taxation.

But we are asked on the authority and reasoning in State Tax Commission of Utah *v.* Aldrich, 316 U. S. 174 (62 Sup. Ct. 1008, 86 L. ed. 1358, 139 A. L. R. 1436), to now hold that the intangible credits here involved may be taxed at the domicile of the debtor. That case involves a succession tax on intangibles; that is, a tax on the privilege of the succession by a person or persons to the title to property left by another on his death, within established rules of law. The holdings by that court on this subject present varying views. In Kirtland *v.* Hotchkiss, 100 U. S. 491 (25 L. ed. 558), the taxable situs of intangibles was held to be at the domicile of the owner. But the case of Blackstone *v.* Miller, 188 U. S. 189 (23 Sup. Ct. 277, 47 L. ed. 439), held that such situs for a succession tax may also be at the domicile of the debtor. Then came a veering away from that rule in Farmers Loan & Trust Co. *v.* Minnesota, 280 U. S. 204 (50 Sup. Ct. 98, 74 L. ed. 371, 65 A. L. R. 1000); Baldwin *v.* Missouri, 281 U. S. 586 (50 Sup. Ct. 436, 74 L. ed. 1056, 72 A. L. R. 1303); and Beidler *v.* South Carolina Tax Commission, 282 U. S. 1 (51 Sup. Ct. 54, 75 L. ed. 131). There was a distinct overturning of Blackstone *v.* Miller in First National Bank *v.* Maine, 284 U. S. 312 (52 Sup. Ct. 174, 76 L. ed. 313, 77 A. L. R. 1401). In the latter case, it was determined that a succession tax as to intangibles could be

legally levied only in the State of the domicile of the owner. Many subsequent cases of that court referred to this decision as the law of the land on the question of the jurisdiction of States to impose a death or succession tax. But there has been a shying off by that court from this rule in some recent cases mentioned in the Aldrich case, in which latter decision First National Bank *v.* Maine was overruled, and the rule announced in Blackstone *v.* Miller was again established. In the Aldrich case, the Supreme Court of the United States places jurisdiction to tax as follows: "In case of shares of stock 'jurisdiction to tax' is not restricted to the domiciliary State. Another State, which has extended benefits or protection or which can demonstrate 'the practical fact of its power' or sovereignty as respects the shares (Blackstone *v.* Miller, supra), may likewise constitutionally make its exaction." Whether, however, the asserted authority to lay and collect an ad valorem property tax on credits held by non-resident owners by the State of the domicile of the debtor be based upon the protection afforded by the taxing sovereignty to the creditor domiciled outside its territorial limits, or upon the capability of the State to demonstrate the practical fact of its power, in our opinion makes little difference. Mr. Justice Jackson, in his dissent in the Aldrich case, sums up the logic of such tests in the following language: "One way to go about it is to say that those States can tax which have the physical power to do so and have conferred some benefits or protection on the taxpayer. . . My difficulty is that on its face—and so far as applied—this test comes out to the point where might does make right. For in a very real sense every State and territory in the Union has conferred very real benefits upon every inhabitant of the Union." It is of course the final responsibility and power of the Supreme Court of the United States to construe and apply the provisions of our Federal constitution. It is equally the final responsibility and authority of this court to construe and apply when invoked the provisions of our State constitution, when the same contravenes no Federal constitutional provision. There appears to be no dissenting voice in the national Supreme Court, however, to the soundness of the proposition often announced, that for a State to undertake to tax property over which it has no territorial jurisdiction is a violation of the due-process clause of the Federal constitution. It is equally

undeniable that such an exaction would violate the due-process clause of our State constitution. It would be a taking of property without due process of law. As stated in Burnett *v.* Brooks, 288 U. S. 378, 401 (53 Sup. Ct. 457, 77 L. ed. 844, 86 A. L. R. 747), "Due process requires that the limits of jurisdiction shall not be transgressed. That requirement leaves the limits of jurisdiction to be ascertained in each case with appropriate regard to the distinct spheres of activity of State and Nation. The limits of State power are defined in view of the relation of the States to each other in the Federal Union. The bond of the constitution qualifies their jurisdiction." In Union Transit Co. *v.* Kentucky, 199 U. S. 194, 204 (26 Sup. Ct. 36, 50 L. ed. 150, 4 Ann. Cas. 493), this principle was applied to the taxing power, and it was there held to be "essential to the validity of a tax that the property shall be within the territorial jurisdiction of the taxing power." Being convinced that the jurisdiction to tax intangible credits where no business situs is involved is in the State of the domicile of the creditor and not of the debtor, and that this view is based on solid reasoning and logic, we conclude, in accordance with prior holdings of this court, that the exaction of the tax in the instant case violates the due-process clause of our State constitution as contained in art. I, sec. I, par. III (Code, § 2-103).

■ Since the petition in the instant case was filed in the court below, this court has more than once passed on the question here involved adversely to the contentions of the plaintiffs in error. See *Columbus Mutual Life Insurance Co.* v. *Gullatt* and *Guardian Life Insurance Co.* v. *Gullalt,* 189 *Ga.* 747 (supra); *Suttles* v. *Associated Mortgage Companies,* 193 *Ga.* 78 (supra); *Suttles* v. *Northwestern Mutual Life Insurance Co.,* 193 *Ga.* 495 (supra); *National Mortgage Corp.* v. *Suttles,* 194 *Ga.* 768 (supra); and *Davis* v. *Metropolitan Life Insurance Co.,* 196 *Ga.* 304 (supra). Counsel for the taxing authorities in the case at bar insist that we can sustain their position without overruling any of those cases. They ask, however, if we should rule that those holdings, or any of them, are inconsistent with their position, that we review and overrule them or so much of them as may be held inconsistent with the view that the credits here involved are taxable in this State. It is ably argued that this court has bottomed the holdings in the cases named upon two series of its prior decisions, which are readily reconciled with the taxability of the credits now under consid-

eration. The first of the series they assert embraces the *Armour Packing Company* cases: *Armour Packing Company* v. *Savannah*, 115 *Ga.* 140 (41 S. E. 237); *Armour Packing Company* v. *Augusta*, 118 *Ga.* 552 (45 S. E. 424, 98 Am. St. R. 128); and *Armour Packing Company* v. *Clark*, 124 *Ga.* 369 (52 S. E. 145). They argue that those cases merely adopt and apply the business-situs doctrine of the taxation of intangibles of non-resident creditors, and are not inconsistent with their present contentions. The other series of cases, they insist, are neither applicable nor controlling because decided before the constitution of 1877; that, under the constitution of 1868, then of force, property was not required to be taxed unless expressly so provided by statute, and a failure of the legislature to provide for the taxing of any property or class of property had the effect of exempting it from taxation under that constitution. These cases, they state, are: *Collins* v. *Miller*, 43 *Ga.* 336; *Carey* v. *Edmondson*, 44 *Ga.* 651; and *City of Augusta* v. *Dunbar*, 50 *Ga.* 387. It is the position of counsel for the plaintiffs in error that taxation of the credits involved is required under the State constitution of 1877 and the statutes in conformity therewith, and does not violate the due-process clause of the Federal constitution. They rely on the holding in *Georgia Railroad & Banking Co.* v. *Wright*, 125 *Ga.* 589, 593 (54 S. E. 52), that "The constitution of this State imperatively requires that all property of every nature whatsoever *within the territorial limits of this State* shall be subjected to taxation, except that which the constitution in terms declares the General Assembly may in their discretion exempt from taxation. *Atlanta National Building & Loan Asso.* v. *Stewart*, 109 *Ga.* 80 (2)." (Emphasis ours.)

On motion for rehearing in *National Mortgage Corp.* v. *Suttles*, supra, this court said: "It was said in effect in the *Northwestern Mutual* case that a State can not tax property wholly beyond its territorial jurisdiction, and that any effort to do so would be in violation of the due-process clauses of the State and Federal constitutions; also that, where a credit exists in favor of a non-resident in virtue of a loan, the fact that the debtor resides in this State would not, without more, confer jurisdiction to tax the credit here. . . In a case of this kind we are confronted with a double limitation, since we must stay within both the State and Federal con-

stitutions; and even if it be assumed that the tax claimed in this case might be sustained under the Federal constitution as construed by the United States Supreme Court in the recent case of State Tax Commission of Utah *v.* Aldrich [supra], decided since our decision in the *Northwestern Mutual* case, 'we still can not so construe our Georgia due-process clause, in view of previous unanimous decisions by this court, including the *Northwestern Mutual* case. These decisions necessarily imply that it is the intent and policy of our State constitution that Georgia's jurisdiction to tax is limited territorially to Georgia, and that it can not reach into the bounds of other States. According to these decisions, there must be a tax situs in Georgia, and the mere residence of the debtor does not establish such situs. . . It is true that the constitution of Georgia manifests an intention to tax all property which the State has jurisdiction to tax, but the intention so manifested refers to jurisdiction under the same instrument, namely, the constitution of Georgia. It could not be properly said that the constitution of this State evinces an intention to make the Federal constitution, rather than its own provisions, the standard of State jurisdiction, in the matter of taxation. Nor would the fact that the United States Supreme Court may construe the fourteenth amendment as *not* imposing a particular limitation prevent this court from giving a different construction to our Georgia due-process clause and holding that under this clause the limitation *does* exist. *Kennemer* v. *State,* 154 *Ga.* 139 (2) (113 S. E. 551). . . So the question at last is, not whether the tax here claimed may be imposed consistently with the Federal constitution, but whether, even if that be so, the exaction is still within the jurisdiction of the State, as determined by the Georgia due-process clause. As indicated above, according to previous unanimous decisions by this court construing the Georgia constitution, or shaped at least in the light of it, the evidence shows without dispute that the credits here under consideration were not taxable as claimed." Following the rulings of this court in *Columbus Mutual Life Insurance Co.* v. *Gullatt, Guardian Life Insurance Co.* v. *Gullatt, Suttles* v. *Associated Mortgage Companies, National Mortgage Corp.* v. *Suttles,* and *Davis* v. *Metropolitan Life Insurance Co.,* supra, the credits evidenced by promissory notes executed by residents of this State, but owned by a non-resident and held by it at

its domicile out of this State, are to be taxed only if derived from or used as an incident of property owned or of a business conducted by the non-resident or its agent in Georgia; and this is true although the notes may be secured by a mortgage on land situated in this State.

■ Thus, this court not only has decided this question previously, but also has construed its decisions. Both are adverse to the contentions of the plaintiffs in error. We are asked, however, to review and overrule these decisions. In *Davis* v. *Metropolitan Insurance Co.*, supra, it was ruled: "The request to review and overrule the decisions in *Columbus Mutual Life Insurance Co.* v. *Gullatt* and *Guardian Life Insurance Co.* v. *Gullatt* (supra), and *National Mortgage Corp.* v. *Suttles* (supra), is denied." In the *Metropolitan* case, there was a contention similar to that here, that, because the intangibles are not expressly exempted from taxation, the sovereign power of the State extends over the persons whose relationships are the origin of the property sought to be taxed, and such property is therefore required to be taxed. We are now asked in effect to review the review and to overrule the declination to overrule. It is true, as ruled in *Ellison* v. *Georgia Railroad Co.*, 87 *Ga.* 691 (13 S. E. 809), that, when grave error "competes with truth in the struggle for existence, the maxim for a supreme court, supreme in the majesty of duty as well as in the majesty of power, is not stare decisis but fiat justitia ruat coelum." As was said in *Bracewell* v. *Southern Railway Co.*, 134 *Ga.* 537, 539 (68 S. E. 98), "It is also true that if even a court of last resort determines that it has made a clear and palpable error, it will correct such ruling." However, it was further said in that case, that "the doctrine of stare decisis is an important one. It affects the stability and the certainty of the decisions of the court. A decision concurred in by the entire bench after argument and careful consideration, and followed in other cases, will not readily be overturned, unless clearly erroneous." In a paper read by Mr. Justice Jackson of the Supreme Court of the United States before the recent annual meeting of the American Law Institute, he made the following observations on the stare-decisis doctrine: "Our times have witnessed considerable relaxation in the authority of the precedent. . . Nowhere to-day is the precedent so decisive of litigation as it is supposed to have been in the eighteenth and nineteenth centuries. . . No lawyer today feels such assurance

564

that a pat case will bring him victory or defeat, as lawyers once felt." But he further asserted that, "Unless the assumption is substantially true that cases will be disposed of by application of known principles and previously disclosed courses of reasoning, our common-law process would become the most intolerable kind of ex post facto judicial law-making." On the question of the territorial jurisdiction of this State to tax intangible credits, it is our firm conviction that the rule adhered to for nearly three-quarters of a century by this court is sound. We decline to change it. The request that we review and overrule the decisions controlling this case, named in the third headnote above, is denied.

*Judgment affirmed. Bell, C. J., Jenkins, P. J., and Grice, Atkinson, and Wyatt, JJ., concur.*