## 28762. COLUMBIA BANK FOR COOPERATIVES v. BLACKMON.

INGRAM, Justice.

This is a direct appeal from an order in Fulton Superior Court granting summary judgment in favor of the Revenue Commissioner and denying a summary

judgment to appellant.

The case began as a suit for refund by appellant seeking to recover sums paid by appellant to the state under the Intangible Personal Property Tax Statutes provided by Ga. L. 1953, Nov. Sess., pp. 379, 383; 1955, pp. 288, 289 (Code Ann. § 92-164), as a nonresident holder of long-term notes secured by Georgia real estate.

The appeal presents two questions for decision: (1) whether § 92-164 of the Code is facially unconstitutional because it does not require, for imposition of the tax, a sufficient nexus with the State of Georgia by nonresident holders of long-term notes secured by Georgia realty; and, (2) whether if the taxing statute is facially constitutional, it can be constitutionally applied to appellant as a nonprofit cooperative bank residing in the State of South Carolina with no officers or agents in Georgia but holding long-term notes secured by Georgia realty.

Appellant urges that the recent decision of this court in *First Federal Savings &c. Assn. v. Abbott,* 213 Ga. 864 (204 SE2d 594), requires a reversal in this case. We cannot agree with this contention. In *Abbott,* we determined that the tax imposed by Code Ann. § 92-164 is not a "transaction or recording tax," but "is a one-time tax on intangible property, namely, long-term promissory notes secured by (Georgia) real estate."

A major constitutional problem faced by the court in *Abbott* was essentially one of "equal protection" created by imposition of the tax upon nonresident federal savings and loan associations because the law did not require resident associations to pay the tax. The thrust of the argument advanced by the nonresident association in *Abbott* was that it was denied equal protection of the law by having to pay the tax when resident associations did not have to pay it. We agreed with that argument and held that if Code Ann. § 92-164 were regarded as a transaction or recording tax its applicability to "out-of-state associations and its non-applicability to Georgia based associations would render the statutes imposing the tax in this manner unconstitutional."

Resident federal savings and loan associations are not presently required to pay the tax levied by § 92-164 of the Georgia Code. These associations pay a tax on their

long-term notes when they pay the tax levied on their net worth by the state. This was an issue in *Atlanta Federal Savings &c. Assn. v. Simmons,* 224 Ga. 483 (162 SE2d 342). In that case this court said that "State building and loan associations and federal savings and loan associations stand on the same basis as to taxation as state banks, that is, they are granted the same immunities and exemptions as national banks in this state." Federal law restricted the state's right to tax national banks and the permitted method of taxing the stock or shares of national banks imposed by Georgia law included taxation of the long-term notes of national banks. Therefore, the tax provided in § 92-164 could not be imposed upon national banks.[1]

When viewed in this context, it is evident that even if due process requirements had been satisfied in the *Abbott* case, the tax could not be imposed there without offending uniformity requirements of equal protection. That decision cannot be read to proscribe imposition of the tax on *every* nonresident holder of a long-term note secured by Georgia realty.

With this in mind, we turn to whether § 92-164 meets the demands of substantive due process. To do so there must be a sufficient nexus or connection between the tax and the transaction within the state for which the tax is imposed. See Wisconsin v. J. C. Penney Co., 311 U. S. 435, 444 (61 SC 246, 85 LE 267, 130 ALR 1229). It is thus constitutional to impose a tax when the taxpayer is "sufficiently involved in local events to forge some definite link, some minimum connection sufficient to satisfy due process requirements." See Northwestern States Portland Cement Co. v. Minnesota, 358 U. S. 450, 465 (79 SC 357, 3 LE2d 421, 67 ALR2d 1292). The "minimum connection" sufficient to satisfy due process requirements is difficult to express in parameters. It was found not to exist in the *Abbott* case because the facts

---

[1] Lagniappe: Federal law has now been amended to authorize the states to tax national banks in the same manner as state banks. A change, effective Jan. 1, 1975, is contemplated in Georgia's tax treatment of banks. See Ga. L. 1973, p. 924; and, Ga. L. 1974, p. 1508.

showed the taxable situs of that note was not located in Georgia. In reaching that decision reliance was placed upon the earlier cases of *Columbus Mut. Life Ins. Co. v. Gullatt,* 189 Ga. 747 (8 SE2d 38), and *Davis v. Penn Mut. Life Ins. Co.,* 198 Ga. 550 (32 SE2d 180, 160 ALR 778), decided by this court. *Gullatt* held a promissory note of a citizen of Georgia owned by a nonresident and held at his domicile outside of Georgia is taxable in Georgia only if it accrues out of or is incident to property owned or a business conducted by the nonresident or his agent in Georgia. In *Davis,* the court recognized that a state ordinarily may not constitutionally tax property outside the state's territorial jurisdiction and decided that the 1937-38 Intangible Tax Statute did not authorize Georgia to tax long-term notes secured by Georgia realty held by nonresidents unless the holder was doing business in Georgia.

We followed the rationale of these earlier cases in *Abbott* in deciding there was an insufficient connection for the note to have a taxable situs in Georgia. Although we were not faced directly with whether § 92-164 is facially unconstitutional in the *Abbott* case, we necessarily determined that we regard this provision of the Georgia tax law to meet due process requirements as we held that § 92-164 requires a sufficient connection between the holder of the note and the tax before the state's exaction can be made. We affirm this view and specifically hold that Code Ann. § 92-164 is a proper and constitutional exercise of the state's right to tax the transactions described therein.

The reach of this taxing power by the state may extend to objects of the taxation beyond the borders of the state to tax such intangible property of nonresidents if it is derived from or is used as an incident of property owned or a business conducted by such nonresident or his agent in the state. See *Suttles v. Northwestern Mut. Life Ins. Co.,* 193 Ga. 495, 507 (19 SE2d 396). Nonresident holders of long-term notes secured by Georgia realty who fall within this permissible reach of the statute can be required to pay the tax imposed by Code Ann. § 92-164. This conclusion is supported, but not changed, by the present recording requirement of § 92-164 which was not

a part of the 1937-38 Intangible Tax Statute. See Ga. L. 1955, p. 288.

Having determined this tax meets due process requirements, we move to a consideration of the facts of this case to decide if the present loan obligations are taxable or if a refund is required. The record shows that appellant does not regularly solicit loans in Georgia but has done some solicitation of loans in Georgia. It sends officers and agents to Georgia on numerous occasions before, during and after loan transactions and while in Georgia these employees furnish information to potential debtors about the appellant's loan policies and agents of appellant also inspect the Georgia realty to be used as security for loans. These inspections include evaluations and decisions as to whether the security will be sufficient for the proposed loan. The on-site inspections made for the two loans here involved were made by a loan service representative and by an assistant vice-president of the appellant company. The applications for both loans were initiated as a result of visits by officers and agents of appellant to Georgia. Finally, the loans were closed in Georgia as the loan agreements were executed by the debtor in Georgia.

This is significantly more evidence of a taxable connection with Georgia than appeared in the *Abbott* case where the loan documents were not even executed in Georgia and the only contact was recordation of the security deed in Georgia. "It [can] not properly be said that these loans . . . did not constitute a course of business as distinguished from a single or occasional transaction as to which jurisdiction to tax might not exist." *Suttles v. Northwestern Mut. Life Ins. Co.,* 193 Ga. 495, supra, p. 515. We believe there is enough here to satisfy the "minimum contact" requirements of due process.

The dissent fails or refuses to perceive that a nonresident can conduct a business in Georgia. It is the *conduct* of the business in Georgia which furnishes the taxable connection, not merely the location of an office in Georgia, as suggested by the dissenting opinion. If we adopted the reasoning of the dissent, a nonresident can conduct a wide open lending operation in Georgia and escape payment of the tax which has to be paid by a

resident lender conducting the same business activity as the nonresident. This would result in fundamental unfairness to Georgia lenders and grant a tax boon to nonresident lenders unless they open an office in Georgia. So long as nonresident lenders conduct a lending business in Georgia, they are required to pay the same intangible tax which Georgia law requires of resident lenders. Thus the emphasis, which the equality of the law demands, must be upon the business activity of the lender in Georgia rather than merely upon where the lender has an office.

We conclude that the record in this case shows the appellant is conducting a lending business in Georgia and should pay the same intangible tax required of a resident lender conducting a similar business. The trial court's grant of summary judgment in favor of the State Revenue Commissioner and the denial of summary judgment to appellant must be affirmed.

*Judgment affirmed. All the Justices concur, except Jordan and Hall, JJ., who concur in the judgment only, and Gunter J., who dissents.*

ARGUED APRIL 9, 1974 — DECIDED MAY 7, 1974 —
REHEARING DENIED JUNE 12, 1974.

*B. Harvey Hill, Jr., W. Terrence Walsh, Alston, Miller & Gaines, Adam S. Skorecki,* for appellant.

*Arthur K. Bolton, Attorney General, Robert S. Stubbs, II, Executive Assistant Attorney General, H. Perry Michael, Richard L. Chambers, David A. Runnion, Assistant Attorneys General,* for appellee.

GUNTER, Justice, dissenting.

I am in disagreement with the majority opinion and the judgment rendered in this case. In the recently decided case of *First Federal Savings &c. Assn. v. Abbott,* 231 Ga. 864 (204 SE2d 594), this court held as follows: "We hold that the tax imposed by Code Ann. § 92-164 is a one-time tax on intangible property, namely, long-term promissory notes secured by real estate, and for Georgia to impose such a tax the taxable situs of the note or notes

must be in Georgia." The majority does not today repudiate or overrule *Abbott;* but it attempts to distinguish, unsuccessfully to my mind, the promissory note in *Abbott* from the promissory notes in this case by holding that the promissory notes in this case have attained, by virtue of the appellant's activities in Georgia, a taxable situs within this state. This distinction is, in my judgment, unsupportable by either reason, practicality, or precedent, and it falls in that category that I label "a distinction without a difference."

Prior to today this court has not held that a nonresident lender that solicits loans in Georgia and appraises real estate collateral in Georgia, such lender not having an office or place of doing business in Georgia, has, by such activities through either employees or agents, established a "taxable connection" with Georgia so that promissory notes held by such nonresident lender outside the state of Georgia have acquired a taxable situs in this state.

The net result of today's majority decision is that all nonresident lenders owning long-term notes secured by Georgia real estate have a sufficient "taxable connection" with Georgia so as to permit the imposition of an intangible tax on the notes. This is so because all nonresident lenders solicit in Georgia in some manner, and all nonresident lenders appraise Georgia real estate collateral by employees or agents. But heretofore such activities have not established a tax situs in Georgia for intangibles.

In *Abbott* we quoted in their entirety the first two headnotes contained in *Davis v. Penn Mut. Life Ins. Co.* 198 Ga. 550 (32 SE2d 180, 160 ALR 778) (1944), to show that a note, even though secured by Georgia real estate, owned by a nonresident who did not have a business situs in Georgia, could not be taxed in this state. In the body of the *Penn Mutual* opinion (p. 556), the court said: ". . . It has been in this country the all but unanimous rule to regard such intangibles as located at the domicile of the owner for the purpose of ad valorem taxation . . . The only exception to this rule of which we are aware is the business situs doctrine." The court then went on to say at page 560: "Being convinced that the jurisdiction to tax

intangible credits *where no business situs is involved* is in the state of the domicile of the creditor and not of the debtor, and that this view is based on solid reason and logic, we conclude, in accordance with prior holdings of this court, that the exaction of the tax in the instant case violates the due-process clause of our state Constitution . . ." (Emphasis supplied.)

The court in *Penn Mutual* then went on to restrict the "business situs" exception in the following manner: "Following the rulings of this court in *Columbus Mutual Life Insurance Company v. Gullatt, Guardian Life Insurance Company v. Gullatt, Suttles v. Associated Mortgage Companies, National Mortgage Corp. v. Suttles,* and *Davis v. Metropolitan Life Insurance Company,* supra, the credits evidenced by promissory notes executed by residents of this state, but owned by a nonresident and held by it at its domicile out of this state, are to be taxed only if derived from or used as an incident of property owned or of *a business conducted* by the nonresident or its agent in Georgia; and that is true although the notes may be secured by a mortgage on land situated in this state." (Emphasis supplied.)

As I read all of the prior decisions of this court on this subject, the "business situs doctrine" exception which would allow taxation meant that the nonresident must have had an office or place of doing business within this state, thereby establishing a Georgia domicile, as distinguished from mere activities within the state by the nonresident or his agents such as soliciting loans or appraising collateral within this state. I read the recent *Abbott* decision, the *Penn Mutual* decision, and the unbroken line of cases cited in *Penn Mutual* as meaning that mere activities in Georgia, as distinguished from a business situs in Georgia, do not establish the necessary taxing connection with Georgia to enable the state to tax foreign owned intangibles.

I think that today's majority decision has extended the "business situs" doctrine with respect to the taxation of intangibles as that doctrine has been heretofore applied in this state. I further believe that such extension of the doctrine is not in Georgia's best interest as a matter of principle. Also, I believe that it would be more

judicially honest to plainly overrule *Abbott, Penn Mutual,* and the unbroken line of cases cited in *Penn Mutual,* rather than attempt to make a distinction between the promissory notes in this case and the promissory notes in those cases.

I respectfully dissent.