1. (a) According to previous decisions by this court construing Georgia statutes, a promissory note executed by a resident of this State, but owned by a non-resident and held by the latter at his domicile out of this State, is to be taxed here only if it is derived from or is used as an incident of property owned or of a business conducted by the non-resident or his agent in Georgia; and this is true although the note may be secured by a mortgage on land situated in this State. Collins v. Miller, 43 Ga. 336; Carhart v. Paramore, 44 Ga. 262; Cary v. Edmonson, 44 Ga. 651; Armour Packing Co. v. Savannah, 115 Ga. 140 (41 S.E. 237); Armour Packing Co.
v. Augusta, 118 Ga. 552 (45 S.E. 424, 98 Am. St. R. 128); Armour Packing Co. v. Clark, 124 Ga. 369 (52 S.E. 145); Columbus Mutual Life Insurance Co. v. Gullatt, 189 Ga. 747
(8 S.E.2d 38).
(b) Where notes and mortgages are so owned and held by a non-resident, the maintenance of an office and agency in this State for the purpose merely of protecting the security and ultimate collection or liquidation of the indebtedness, the papers themselves being sent into this State only when needed for cancellation, renewal, or foreclosure, would not be using them in this State, within the rule enunciated. Collins v. Miller, supra; Cary v. Edmonson, supra.
2. Under the facts of the instant case and application of the rule stated, the notes and mortgages in question were not subject to the assessments made, and the judge did not err in granting an injunction restraining enforcement of the tax executions.
3. Since the judgment complained of was demanded by the evidence admitted without objection, it is unnecessary to deal with the assignments of error on the admission of other evidence.
Judgment affirmed. All the Justices concur, except Duckworth, J., disqualified.
 No. 13814. September 10, 1941. REHEARING DENIED NOVEMBER 13, 1941.
The Associated Mortgage Companies, a corporation chartered under the law of Maryland, instituted an action to enjoin enforcement of three tax executions issued by the tax-collector of Fulton County, for state and county taxes for the years 1935, 1936, and 1937, on assessments against credits secured by real estate, being *Page 79 
the notes and mortgages hereinafter described. The assessments and the executions based thereon were attacked on the ground that the notes and mortgages did not have a taxable situs in this State. The tax-collector filed an answer, denying this contention, and asserting validity of the tax executions. After hearing evidence the judge granted an interlocutory injunction, and the tax-collector excepted.
The following facts appeared: Before 1934 the Security Mortgage Company, a Georgia corporation, conducted a loan business in Fulton County. The loans made by it were secured by mortgages on Georgia real estate. The notes and mortgages were placed in trust with the Citizens Southern National Bank of Atlanta, as security for bonds issued and sold by the mortgage company. The bonds were based on a trust indenture executed by the Security Mortgage Company to Citizens Southern National Bank as trustee, and the notes and mortgages were transferred to the trustee as further security for such bonds. As a result of the depression which began in 1929, the greater portion of the loans depreciated in value. Many of the debtors or mortgagors defaulted in payment of interest and taxes, thus forcing the mortgage company to pay large sums of money as taxes on the mortgaged real estate in order to prevent the properties from being sold. The situation grew worse until the Security Mortgage Company was threatened with collapse.
In 1933 and 1934, parties at interest, with the co-operation of Reconstruction Finance Corporation, worked out a refunding plan under which holders of bonds of Security Mortgage Company and other companies similarly situated were given the opportunity of exchanging their bonds for cash and Securities to be issued by the Associated Mortgage Companies, which as a part of the plan was organized in Maryland on September 28, 1934, with corporate powers in part as follows: (a) To engage in . . the business of a mortgage corporation. (b) To carry on and conduct . . business of . . acquiring and obtaining loans secured by mortgages . . on real estate in any of the States of the United States. (g) To carry on or participate with others in the . . financing, liquidation, or reorganization of corporations . . engaged in any lawful business enterprise. (j) To cause . . legal title and/or any estate . . or interest in . . property . . *Page 80 
owned . . by the corporation, to . . be vested in or registered in the name of or operated by any . . association or corporation . . formed or to be formed . . either upon trust for or as agents or nominees of this corporation. (o) To purchase, . . own, hold . . sell and otherwise dispose of property, subject . . to laws of State . . where . . located. (q) To acquire . . property and business of any person, firm, association or corporation, . . engaged in similar business.
Substantially all bondholders of Security Mortgage Company deposited their bonds under this refunding plan. Associated Mortgage Companies exchanged these bonds for notes and mortgages which had been taken for loans made by the Security Mortgage Company. This exchange was consummated with the mortgage company and the trustee, Citizens Southern National Bank of Atlanta, on October 10, 1934. The negotiations with the mortgage company and the trustee were handled by Associated Mortgage Companies from Baltimore, and the only acts performed in the State of Georgia were those connected with the physical transfer and delivery. The trust indenture made by the mortgage company to the trustee and the notes and mortgages were all transferred in writing and delivered to Associated Mortgage Companies, or to another for it, in this State. There were originally 215 of such notes and mortgages, the total principal amount of which was about $650,000. These and the trust indenture, on direction of Reconstruction Finance Corporation, were immediately transmitted to the Baltimore branch of the Federal Reserve Bank of Richmond, Virginia. Thereafter the notes and mortgages were kept in Baltimore, except when needed in Fulton County for cancellation, renewal, extension, or foreclosure.
From October 10, 1934, to April 1937, Associated Mortgage Companies maintained an office in Fulton County for the purpose of "servicing" the mortgages so purchased from Security Mortgage Company and real estate acquired by foreclosures. Monthly and semi-annual payments on these mortgages were customarily made at this office, where also maturity notices were prepared and mailed. Other duties of the employees were to collect rent on properties acquired by foreclosure; to collect the principal and interest on the loans; to check ad valorem tax payments for which the mortgagors were liable, and to induce the mortgagors to make prompt payment. *Page 81 
Until March 1, 1936, the Atlanta office was in charge of a former officer of the Security Mortgage Company, first as resident manager and later as field representative. On the date last mentioned, a local real-estate agent took over the actual servicing of the mortgages and the other duties stated.
Since the transfer to Associated Mortgage Companies, about 50 per cent. of the mortgages have been foreclosed. The notes originally were payable in Fulton County. Notes taken afterwards in renewal or for purchase money of foreclosed properties were made payable in Baltimore. Associated Mortgage Companies has never made any new loans or solicited business of any type in Georgia, but on the contrary has limited its operations in this State to the liquidation of the mortgages it acquired from Security Mortgage Company. This was its only purpose in maintaining an office and agency in Georgia, and all acts so performed were devoted solely to this end, by protecting its security, and ultimate collection of the indebtedness through payments by the debtors or foreclosure.
According to an agreed statement, "Except when needed in Fulton County for foreclosure or for cancellation, the notes and mortgages which evidence the credits were kept in Baltimore, Maryland." Associated Mortgage Companies filed corporation reports with the Department of Revenue of this State, and paid occupational taxes for the years 1935, 1936, and 1937, in accordance with the Code, §§ 92-2403, 92-2404, 92-2405.
On interlocutory hearing the defendant objected to statements of several witnesses, on the ground that they were mere conclusions. In the bill of exceptions error is assigned on the overruling of these objections, and on the grant of an interlocutory injunction restraining enforcement of the tax executions.