DAVIS, tax-assessor, *et al. v.* METROPOLITAN LIFE
INSURANCE COMPANY.

No. 14555.   JULY 7, 1943.

*E. H. Sheats, W. S. Northcutt,* and *Standish Thompson,* for plaintiffs in error.

*Grover Middlebrooks* and *W. H. Mewbourne,* contra.

GRICE, Justice. ■ The first of the more recent cases reaching this court involving questions relating to the situs for taxation of intangible property of non-residents was *Columbus Mutual Life Insurance Co.* v. *Gullatt,* together with the related case of *Guardian Life Insurance Co.* v. *Gullatt,* 189 *Ga.* 747 (supra). In the opinion it was said: "It has long been settled by rulings of this court that a promissory note of a citizen of this State, owned by a non-resident and held at his domicile outside of this State, is taxable here only if it accrues out of or is an incident to property owned or a business conducted by the non-resident, or his agent, in Geor-

gia. *Armour Packing Co.* v. *Clark,* 124 *Ga.* 369 (52 S. E. 145);
*Armour Packing Co.* v. *Augusta,* 118 *Ga.* 552 (45 S. E. 424, 98
Am. St. R. 128); *Armour Packing Co.* v. *Savannah,* 115 *Ga.* 140
(41 S. E. 237); *City Council of Augusta* v. *Dunbar,* 50 *Ga.* 387;
*Cary* v. *Edmondson,* 44 *Ga.* 651; *Collins* v. *Miller,* 43 *Ga.* 336."
The foregoing was recognized as a sound proposition of law and
was restated in *Suttles* v. *Associated Mortgage Companies,* 193 *Ga.*
78 (17 S. E. 2d, 272), and in *National Mortgage Corporation* v.
*Suttles,* 194 *Ga.* 768 (supra). In *Suttles* v. *Associated Mortgage
Companies* is to be found also the pronouncement that where notes
and mortgages are so owned and held by a non-resident, the main-
tenance of an office and agency in this State for the purpose merely
of protecting the security and ultimate collection or liquidation of
the indebtedness, the papers themselves being sent into this State
only when needed for cancellation, renewal, or foreclosure, would
not be using them in this State, within the rule enunciated. And
in *Suttles* v. *Northwestern Mutual Life Insurance Co.,* 193 *Ga.* 495
(19 S. E. 2d, 396, 143 A. L. R. 343), it was ruled that, where a
non-resident life-insurance company made loans secured by Georgia
real estate, without reference to policyholder relationship, and
through a channel entirely separate from that through which it
issued insurance policies to Georgia residents, doing so merely as
part of its general plan of investment, for protection alike to all
of its policyholders, and with no other reference to its Georgia
insurance business, the loans thus made by the company were not
so connected with its Georgia insurance business as to render
credits arising therefrom taxable here merely on the theory that
they were a part of such insurance business. In that case this court
decided that the credits were taxable in Georgia, because under the
proofs it was shown that the company did a loan business through
an agent in this State, the crux of the decision on this point being
expressed as follows: "Where a non-resident corporation, a life-
insurance company, employed a loan agent in Georgia for the pur-
pose of soliciting and submitting applications for loans and mak-
ing reports concerning applicants and the proffered security, the
agent being employed on a salary basis and having in this State
a fixed office or place of business leased in his own name, but the
rent of which was paid by the company through reimbursement to
him on expense account, and in all negotiations in reference to

loans the company dealt with applicants by communications passing through him as its agent, the notes and security deeds though prepared in the home office being sent to him for execution by applicants in this State, and, after their return to the home office and approval there, checks being mailed to him for delivery to applicants here, so that all loan contracts were thus finally executed in Georgia, and where as many as nineteen long term loans were so made during continuous existence of such agency, the company in making such loans was conducting a loan business in Georgia, and thus came within its taxing power, as to property derived from or used in such business." While true, as stated in the opinion, that "every case of this general type must depend on its own particular facts, because situs can be determined by facts and by these only," nevertheless, in view of the exhaustive treatment heretofore given to the controlling questions involved, and with these precedents before us, we must regard the law on this subject as having been established, making it unnecessary to blaze any new trails in this field, or to even again mark out the lines. The aforementioned decisions not only point out the landmarks, but they make plain the boundaries. The blazes are fresh and are before our eyes. Our object shall be to apply the law to the undisputed facts of this record.

Of the four different groups of loans here involved, the first three may be treated together: Those made at the time when Trust Company of Georgia was loan correspondent, those when C. D. LeBey & Company was, and those when Adair Realty and Trust Company was. There were written contracts between the insurance company and each of the three, not precisely identical, but in most respects alike, and in no material manner different from that between Mortgage Guaranty Company of America and National Mortgage Corporation, as shown from an examination of the record in the clerk's office in the *National Mortgage Corporation* case, supra. All facts relating to the manner of making the mortgages and the connection of Metropolitan Life Insurance Company therewith were developed by the defendant tax officials; but their counsel contend that these facts were not brought out in either *Suttles* v. *Associated Mortgages,* 193 *Ga.* 78 (supra), or in *National Mortgage Corporation* v. *Suttles,* 194 *Ga.* 768 (supra), for the reason that Mortgage Guarantee Company of America, which transferred mortgages to

National Mortgage Corporation, had gone out of business, and it was impossible to develop with any certainty the connection between the two companies. The application for the loan in each instance was made to the correspondent. The loans were made by the correspondent out of its own funds. They were subsequently sold to the insurance company. As was observed in the opinion on the motion for rehearing in the case last referred to, the contracts created the relation of buyer and seller of commercial paper, together with the security; and it was held that "such a relation may exist without agency, on the same principle that one might contract to purchase the entire output of a mill or factory, and at the same time enter into a standing agreement touching delivery and payment, with the right of subsequent inspection, rejection, and refund, and other matters, without even approaching the relation of principal and agent."

That, contemporaneously with the closing of a loan by a correspondent, the correspondent would place a transfer on the loan deed in favor of Metropolitan, that a title policy was issued in favor of the Metropolitan, that fire-insurance policies had mortgage clauses in the Metropolitan's printed form attached thereto, in its favor, that some of the notes signed by the borrower called for interest at six per cent., of which the correspondent retained a certain per cent for "servicing" the loans, or that the title company at the time of closing paid off existing liens with the proceeds of the loan, did not convert the relationship between the correspondent and Metropolitan from that of seller and buyer to that of agent and principal. It was contemplated that these loans would be bought by Metropolitan. All the above were necessary to be done before Metropolitan would purchase, and were done in pursuance of the contract. The title company did not use funds furnished by Metropolitan with which to pay off existing liens, nor did Metropolitan pay it for the services rendered. In each instance it was employed and paid by the correspondent, the examination of the title and the recording of the papers being pursuant to one employment. In no instance did the title company have any connection with Metropolitan until the loan was closed.

The fourth group of loans were made directly by the insurance company. Typical of those was the one made to L. P. Lewis Estate, a corporation. It made application to Adams-Cates Com-

pany in Atlanta, for a loan. Adams-Cates Company inquired of the Metropolitan Company in New York whether it would be interested in considering the application. The Metropolitan Company requested Adams-Cates Company to have the application signed by the applicant on a form prepared by Metropolitan. This was done, and the application was sent to the Metropolitan in New York by Adams-Cates Company. The Metropolitan Company had no office or agent in Fulton County for the purpose of soliciting applications for loans or consummating loans. The application of the L. P. Lewis Estate was considered in New York by Metropolitan's real-estate committee, who approved it under certain conditions. Notice of its approval was given by a letter mailed to the applicant by the Metropolitan Company from New York. The applicant was thus informed that the title policy must be issued by New York Title & Mortgage Company, the Atlanta representative of which was Georgia Title & Guaranty Company. The applicant was requested to arrange for the title examination, the issuance of the title policy, and the preparation of the papers, with Georgia Title & Guaranty Company. Metropolitan Company wrote to Georgia Title & Guaranty Company the terms of the loan, and stated that its bill for services and disbursements was to be paid by the borrower. Adams-Cates Company was employed and paid by the borrower, and in no sense was it the agent of the insurance company for the purpose of making the loan. Under the authorities cited above, the maintenance of an office and agency in this State for the purpose merely of protecting the security and ultimate liquidation of the indebtedness, the papers themselves being sent into this State only when needed for collection, renewal, or foreclosure, would not be using them in this State as an incident of property owned or of a business conducted in Georgia so as to give taxable situs here. Applying the law as ruled in the decisions referred to above, it must be held that none of the three correspondents first named nor Adams-Cates Company was a loan agent of Metropolitan.

■ If neither Trust Company of Georgia, C. D. LeBey & Company, Adair Realty and Trust Company, nor Adams-Cates Company was an agent of Metropolitan, nor the property sought to be taxed accrued out of or as an incident of property or of a business conducted by the latter or either of its agents as above, then there

is no situs for taxation, unless the Atlanta Title & Trust Company or the Georgia Title & Guaranty Company was an agent of Metropolitan Life Insurance Company for the purpose of making these loans. On that subject the proof shows that neither of the two title companies had any connection with Metropolitan until after the loan was closed, except the manual delivery of the check. Neither of the two solicited applications for loans, or had the right to fix the terms of a loan, or to pass upon the value of the security. They received no compensation from Metropolitan. That in the loan to the L. P. Lewis Estate the Metropolitan sent its check covering the proceeds, it being payable to the order of both the borrower and the title company, the title company being requested to deliver the check when the loan papers were signed and when it could certify that the security deed was a first encumbrance, did not make the title company its loan agent, in view of the other evidence in the record. This loan was made "subject to the approval of title by our representative, Georgia Title & Guaranty Company," and the borrower was requested to arrange for title examination and for the preparation of the papers through the title company. There is, under the circumstances, no significance to be attached to the fact that Metropolitan's check was drawn as it was. It can not be held that Atlanta Title & Trust Company or Georgia Title & Guaranty Company was a loan agent of the Metropolitan, so as to give any of the credits involved in this suit a taxable situs in this State. Under all the circumstances the mere reference to the title company as "our representative" did not show that it was the agent of the insurance company to lend money in Georgia. "By using intermediaries as channels of transmission for papers, relying upon their inspection of property and examination of titles, made at the borrower's instance, and forwarding the money through them also at his instance, the lender does not constitute them his agent to make the loan, and is not chargeable with the consequences of dealings between them and the borrower, whether those dealings be public or private, known or unknown. *Merck* v. *American Freehold etc. Co.,* 79 *Ga.* 213 (2) (7 S. E. 265)." *Equitable Life Assurance Society* v. *Cochran,* 170 *Ga.* 270 (152 S. E. 248). See *Griffith* v. *Federal Land Bank of Columbia,* 190 *Ga.* 578, 580 (10 S. E. 2d, 71); *Bellerby* v. *Goodwyn,* 112 *Ga.* 306 (37 S. E. 376); *McCall* v. *Herring,* 118 *Ga.* 522 (3) (45 S. E. 442).

Counsel for the plaintiffs in error press the insistence that the contracts between the borrower and Adams-Cates Company, and the ones between Metropolitan and its three correspondents were purely colorable, and that in each instance the Metropolitan came into this State and made loans through its agents. Counsel relies on the following language in *Clarke* v. *Havard*, 111 *Ga.* 242 (36 S. E. 837, 51 L. R. A. 499) : "Could not the jury have found, and ought they not, in view of all the evidence, to have found that the contract embraced in the application was purely colorable? The law cares nothing about the form of a transaction, but characterizes it according to its substance and results." The facts there were that Manda A. Clarke, asking to borrow money, applied to Barnett for a loan, supposing she was dealing exclusively with him. He had on hand money which had been sent to him by Security Investment Company through the Georgia Loan & Trust Co., his coagent, to be loaned. He let the applicant have the money, taking her note payable to the Investment Company, after deducting certain commissions. She, unable to read, had signed a written application for the loan, which purported to constitute Barnett her agent to procure the loan. The opinion lays emphasis on the fact that Barnett had received this money from the Investment Company and had it on hand when she called on him, and then adds: "This case is obviously different upon its facts from that of *Merck* v. *American Freehold etc. Mortgage Company*, 79 *Ga.* 213 (7 S. E. 265), and numerous others of its class, in which the lender received the borrower's application, passed upon it for himself, and for himself decided whether or not the security was good and the terms offered satisfactory." It may be that the insurance company in investing that part of its assets in real estate mortgages in Georgia deliberately determined on the two methods shown in this record for the purpose of avoiding a tax situs in this State as to the credits arising therefrom; but if in so doing it remained within its rights, such a purpose could not make taxable that which would not otherwise be. A person may deliberately choose to make his residence near to but beyond the corporate limits for the very purpose of avoiding the payment of city taxes, but his motive in such a case would impose on him no tax liability. If the insurance company did not have an agent in Fulton County through whom it solicited or made loans, but in the one instance received an appli-

cation for a loan from one who was a broker employed by the borrower, and in the others purchased commercial paper from the lenders who with their own funds had already made the loans, these facts would not authorize a finding that as a matter of fact the company thereby loaned money in Georgia through its agent.

■ Complaint is made that the court excluded from evidence various writings which it is claimed tended to show that the three correspondents and the two title companies were the agents of Metropolitan Life Insurance Company in making the loans. These writings include notices sent out as to payments being due, preliminary title report addressed to Metropolitan, a receipt given by a borrower to one of the title companies which contained the recital, "being the proceeds of a loan made by Metropolitan Life Insurance Company." None of these was signed by the Metropolitan, or by any one purporting to sign for it. There is no proof that the insurance company sent out any of these notices, or ever approved or ratified any of these documents. These were at best but declarations of those who plaintiffs contend were the agents of the insurance company. They were offered merely to show agency. Agency can not be proved by the declarations of the alleged agent. *Jones* v. *Harrell,* 110 *Ga.* 373 (35 S. E. 690); *Amicalola Marble & Power Co.* v. *Coker,* 111 *Ga.* 872 (36 S. E. 950). As particularly in point, see *National Building Association* v. *Quin,* 120 *Ga.* 358 (47 S. E. 962); *Georgia State Savings Association* v. *Wilson,* 189 *Ga.* 21 (5 S. E. 2d, 14). No error was shown in these grounds. In other added grounds the movants present the contention that under the constitution these credits are taxable, which is but another way of insisting that the verdict was wrong. It is not deemed necessary to add further to this view of the case.

■ The request to review and overrule the decisions in *Columbus Mutual Life Insurance Co.* v. *Gullatt,* and *Guardian Life Insurance Co.* v. *Gullatt,* 189 *Ga.* 747, and *National Mortgage Corporation* v. *Suttles,* 194 *Ga.* 768 (supra), is denied.

*Judgment affirmed. All the Justices concur.*