1. The act of December 31, 1937 (Ga. L. Ex. Sess. 1937-1938, p. 875), providing for permanent tenure of certain officers and employees of Richmond County, provides in section 9, that, "Nothing herein contained shall restrict the right of said board to abolish any position held by any permanent employee when such position or office, in its judgment is no longer necessary; provided, however, that if the abolition of a position is resorted to as a subterfuge to discharge such employee, and was not justified, such employee shall have his action therefor as for a breach of contract."
2. "The answer of a defendant, as to facts within his own knowledge, responsive to the discovery sought, shall be evidence in his favor, and may be rebutted only by two witnesses, or one witness and corroborating circumstances: provided, discovery shall be expressly prayed in the plaintiff's petition." Code, § 38-1105.
3. In this case, the plaintiff, relying upon the act of 1937, supra, sought among other things to restrain the enforcement of a resolution of the county commissioners of roads and revenues of Richmond County, purporting to abolish a position which the plaintiff alleged he held as a permanent employee, and in his petition he expressly demanded discovery. Held, that, under the law quoted above as applied to the evidence, including replies of the defendants to interrogatories propounded by the plaintiff, the judge did not err in refusing an interlocutory injunction.
 No. 14981. FEBRUARY 6, 1945. *Page 801 
The judgment under review is one denying an interlocutory injunction. Demurrers to the petition were filed, but not passed on.
Frank E. Morgan filed a suit for damages and injunction against E. C. Mertins and four other persons named, alleging that they are the commissioners of roads and revenues of Richmond County, and against John B. Kennedy, named as a defendant "for the purpose of discovery." M. L. Plunkett, an alleged employee of the county, was also named as a defendant.
The plaintiff alleged that, for the past 33 years, he had been an employee of Richmond County, and, for the past nine years, had been superintendent of roads and bridges of said county, and in addition had been warden of the county; and that the defendants named as commissioners had adopted a resolution, whereby they had undertaken to abolish the position of superintendent of roads and bridges, and thus to discharge him as a "permanent employee," without compliance with and in violation of an act of the General Assembly approved December 31, 1937, providing for the permanent tenure of certain officers and employees of Richmond County, and for other purposes. Ga. L. Ex. Sess. 1937-1938, p. 875. He alleged further that John B. Kennedy is the domineering political figure in Richmond County, is treasurer and ringleader in the faction known as the "Cracker Party" in that county, collecting from most of the county and city employees approximately one per cent. of their salaries and using the same to further the interests of said political faction; that all of the commissioners are members of the so-called "Cracker Party" and amenable to the behests and demands of the said Kennedy, and that their action in passing the resolution aforesaid was due to no other cause than the desire of the four commissioners voting therefor to obey the demands of said Kennedy, who had declared to them that the plaintiff "had to go," or words to that effect. It was further alleged that the resolution was passed without any complaint being filed against the plaintiff and without notice to him, and was passed capriciously and without reason or justification, and "is a mere subterfuge to deprive your petitioner of the position he had been occupying for so long." The resolution was passed on January 4, 1944. It declared the position of superintendent of roads and bridges abolished, and provided that *Page 802 
the county engineer be placed in charge of the roads-and-bridges department to serve at the will of the commission.
The petition also contained, among others, the following allegations: The resolution "indeed did not abolish the position which your petitioner held, but merely sought to transfer some of the duties performed by him" to the county engineer, M. L. Plunkett. The said Plunkett "has no legal right to interfere with petitioner in the discharge of his duties," but is doing so by demanding that he relinquish all power and authority to Plunkett, and by other alleged acts, to the great loss and disturbance of the petitioner. His salary is $265 per month, payable monthly, and as a part of his compensation he is furnished a home in which he has resided for the past nine years or more, which is of the value of $75 per month, making a total salary of $340 per month. As evidence that said resolution was capriciously passed, he charges that the commissioners did not notify him of their action, but continued to pay him his regular salary for the months of January and February, 1944. He is informed that he will not be paid any further salary by said board, and that they will undertake to oust him from the possession of his home to his great hurt and damage. After learning that the board of commissioners had passed the resolution in question, he employed attorneys to represent him, and they made written demand upon said board that it rescind its action and restore him to his former status as superintendent of roads and bridges, a copy of which demand was attached as an exhibit to the petition. The attempt to abolish his position was ineffectual, and if the defendants named as commissioners are not enjoined, they will illegally oust him from his said position and from the house in which he has been living, and will refuse to pay him his salary and prevent him from performing his duties and earning such salary. The conduct of the four commissioners who voted for the resolution was a conspiracy concocted and carried into effect by them for the express purpose of injuring him in violation of his civil rights as guaranteed by act of Congress. The action of said parties has caused him "great embarrassment, worry and anguish; it has ousted him from a lifetime job," the tenure of which was intended by the act of December 31, 1937, to be permanent; and for him now to be removed from said position at his age, is to completely ruin him financially, in that he cannot hope to obtain *Page 803 
any other employment in which he might exercise his talent, nor in which he could make anything like the remuneration he makes in the position he has held for the past 30 years or more. He is now 60 years of age, has a life expectancy of 14 years, and "had it not been for the action of the defendants in ousting him, if their action is sustained, he would have retained said position and earned each year the sum of $4080, and would have earned during the period of his expectancy the sum of $50,000, or more, and he alleges that he has been damaged in that amount." In order to properly prosecute his claim, he is entitled to discovery from the defendants, and they should be required to answer under oath certain questions set forth in the prayers.
Wherefore, not waiving discovery, but expressly demanding such, he prayed: (a) that the defendants answer under oath all the questions propounded to them; (b) that the defendants named as commissioners be enjoined from taking any action to carry into effect the resolution of January 4, 1944; that they be enjoined from interfering with him in the use of the house which he now occupies as a home, from interfering with him in any manner in the performance of his duties as superintendent of roads and bridges, and as warden of Richmond County, and from paying his salary to Plunkett for services which have heretofore been rendered by the petitioner; that Plunkett be enjoined from collecting and salary which has heretofore been paid to the petitioner, and from interfering with him in the performance of his duties; and that John B. Kennedy be enjoined from interfering with said county commissioners with respect to the petitioner's rights; (c) that on the hearing of said cause he be granted a permanent injunction; (d) that he have damages against the four commissioners who voted for the resolution, and John B. Kennedy, in the sum of $50,000; (e) for process; and (f) for general relief.
By amendment, he alleged that he was first employed as superintendent of roads and bridges by a resolution entered on the minutes January 1, 1931, although he had been an employee of the county for a number of years prior thereto, and had been re-elected as superintendent of roads and bridges for the several years since that date, by resolution duly entered on the minutes of the board; that his employment has been continuous and uninterrupted since he was first elected, and he was so employed on the date of the act *Page 804 
of December 31, 1937, and has been re-elected with said act in full force during all of said years down to and including 1943, copies of these resolutions being attached to the amendment.
In none of these minutes does it appear that any definite period or term of employment was stated, except that the minutes for January 6, 1942, show that all county employees were re-elected for the year 1942. All minutes from 1936 to 1943 inclusive, except for the year 1942, show expressly that the employment was subject to the "will" of the commission or board.
The defendant commissioners and M. L. Plunkett filed a joint answer, in which they admitted some of the plaintiff's allegations and denied others. They alleged and contended that the plaintiff was employed only at the will of the commission at the time the resolution in question was adopted, and that he never at any time became a permanent employee within the meaning of the act of 1937. They further alleged and contended that the resolution was adopted in good faith for reasons of economy, and that it was valid as against the plaintiff. They denied that their action was influenced by Kennedy, and alleged that in abolishing the position of superintendent of roads and bridges they acted within their own discretion. They denied that the plaintiff is entitled to live in the house which he had been occupying as an employee, and prayed recovery of the same. They also denied liability for damages. They contended that their action was valid under section 9 of the act of 1937, and they also invoked the act of February 24, 1933, providing for the removal of employees at the pleasure of the county commissioners in counties having a population of not less than 75,000 nor more than 100,000. Ga. L. 1933, p. 123. In response to certain of the plaintiff's interrogatories, they answered that there is such an organization in Richmond County as the "Cracker Party;" that John B. Kennedy is the treasurer of such organization, and that each of the defendants is a member of it, and contributes $12 per annum thereto. In answering other interrogatories, they denied all bad faith or improper motive, and asserted in effect that they acted without influence or interference on the part of Kennedy. Kennedy filed a separate answer, in which he denied all allegations as to influence and interference on his part. He reserved answer to several of the interrogatories, to which he had demurred upon the ground that they were irrelevant. He did *Page 805 
answer one question by stating that he was commissioner of public safety of the city council of Augusta, and in reply to two others relating to his alleged interference, he answered, "no." Both answers to the petition were filed subject to demurrer. The petition and the answers were all positively verified, and were all introduced as evidence on the interlocutory hearing.
The plaintiff testified in support of his petition, and called to the witness stand for cross-examination two of the commissioners, Miles and Mertins, who were interrogated both on cross and direct examination. Certain documentary evidence was introduced by the defendants. After hearing the evidence, the judge denied an interlocutory injunction, and the plaintiff excepted. In connection with his judgment, the judge delivered a written opinion, discussing the law and the evidence.
It appears, from recitals in the bill of exceptions and from the transcript, that the plaintiff filed two other suits, one for mandamus and one for the writ of quo warranto, and that all of said proceedings came on for hearing before the judge at the same time, but that he rendered a decision in the injunction case alone. Some additional facts are stated in the opinion, infra.
The act of 1933 provides that in counties having a population of not less than 75,000 and not more than 100,000, "the warden, deputy warden, guard, physician, or any other officer or employee who has charge, control, or direction of convicts in such counties, and whose salary is payable out of the county treasury of any of such counties, shall be appointed by the board of county commissioners, or other fiscal agent of the respective counties affected hereby; and any such officers or employees may be removed at the pleasure of the board of county commissioners, or other fiscal agent authorized to appoint such officers or employees." Ga. L. 1933, p. 123.
The act of 1937, relied on by the plaintiff, contains among others the following provisions:
"Section 1. There shall be a permanent tenure of certain officers and employees of Richmond County, on the terms and conditions herein provided for.
"Section 2. There is included within the provisions of this act all employees of Richmond County who otherwise meet the descriptions and definitions herein, and who are not specifically excluded *Page 806 
under the terms of this act. Persons that are excluded from the provisions of this act are officers elected by the vote of the electorate and casual or temporary employees; that is, those employed, or who may be employed, at the will of the board of commissioners of roads and revenues of Richmond County. . .
"Section 3. Definitions. As used in this act, the following terms and phrases shall have the following described meaning, to wit:
"(a) `Employee' shall include all employees and officers of Richmond County elected or appointed by the board of county commissioners of roads and revenues of said county, if such employee comes within the included designation as set forth in section 2 of this act.
"(d) `Effective date' shall mean the first day following the approval of this act by the Governor as to the beginning of the probationary period, but no employee shall become permanently employed before February 1, 1939.
"(g) `Continuous employment' shall mean employment unbroken by discharge or resignation. Re-election or reappointment at the end of a term shall be regarded as continuous employment.
"(h) A `permanent employee' is an employee who has been continuously employed for the requisite probationary period as provided for by the terms of this act.
"(i) A `casual employee' shall mean an employee, who is employed at different times or periods for special or temporary work and whose employment is not under the terms of this act, continuous for the probationary period herein provided for; or who is employed at the will of the board.
"Section 4. The probationary period is hereby fixed as one year of continuous employment either before, and/or after February 1, 1939; provided such employee is an employee of said board on February 1, 1939.
"Section 5. All persons who are on February 1, 1939, or thereafter become permanent employees as herein provided by having served the requisite probationary period and otherwise coming within the terms of this act shall continue their employment until such employment is terminated as hereinafter set out.
"Section 6. On and after February 1, 1939, the tenure of permanent employees shall be until they are removed or discharged *Page 807 
for either of the following reasons only, to wit: [Specifying various causes for removal].
"Section 7. Said board may discharge, demote, reduce or suspend without pay, any permanent employee, or may delegate to the head of any department, or may delegate to the chairman of any committee under which said employee may be working, the power to discharge any permanent employee for violation of any of the preceding sections of this act.
"Section 8. Upon being so discharged, suspended without pay, demoted or reduced in rank, such employee, may within ten days of such discharge, file a written demand with the clerk of said board for an investigation of such charges and for a written statement of the charges upon which said discharge, suspension, demotion, or reduction in rank was made; whereupon, it shall become the duty of said clerk to furnish to said board a copy of demand for investigation, and it shall be the duty of said board, head of department, or chairman of committee discharging said person to file with the clerk of said board a statement of the grounds of such discharge. This statement shall be filed within five days after receipt of the demand therefor, and a copy of same furnished to the employee upon his calling for it within five days. Should employee not call for the said copy of charges within the five day period, thereafter, within ten days of the expiration of the five day period, or within ten days from the date employee does actually call and receive the copy of the charges, the said board, shall, after not less than five days' notice to the employee, conduct an investigation and public trial of such charges, with the right of the employee to be present or be represented by counsel and a committee of not more than five of his own choosing, and each side may have the clerk to issue and have served subpoena for witnesses to offer testimony. Upon the conclusion of such hearing, said board shall vote on the question of whether the charges against the employee shall be sustained or whether he shall be reinstated, and if sustained, such employee may be discharged upon a majority vote of said board. If, in the opinion of a majority of the entire membership of said board, said charges have been sustained, it may reinstate him without pay for the period during which he has been suspended, or discharged, or it may discharge him. If found not guilty and reinstated, his salary, wages, or compensation shall be *Page 808 
uninterrupted. Any person may prefer written charges against an employee, which charges shall be served personally on the employee by the clerk and shall be handled in the manner provided for in this section.
"Section 9. Nothing herein contained shall restrict the right of said board to abolish any position held by any permanent employee when such position or office, in its judgment, is no longer necessary, provided, however, that if the abolition of a position is resorted to as a subterfuge to discharge such employee, and was not justified, such employee shall have his action therefor as for a breach of contract.
"Section 10. No permanent employee shall be discharged, demoted, or suspended for any political belief or failure to vote in any particular way, nor for membership in or affiliation with any organization, labor union, or other association that does not affect his efficiency as an employee; provided that no employee shall be entitled to the benefits of this act who shall not at all times remain a duly qualified and registered voter of Richmond County." Ga. L. Ex. Sess. 1937-1938, p. 875.
The attorneys on both sides have argued the case as if the judge had sustained a general demurrer and dismissed the petition, so as to require a decision on whether the petition alleged a cause of action for any of the relief prayed. In so dealing with the case, they have discussed various questions which we do not deem it necessary to pass on at this time. The plaintiff sought an injunction and damages, and while it appears that demurrers were filed, the judge merely refused an interlocutory injunction, expressly reserving judgment on the demurrers. Accordingly, the only question now for decision is whether the judge erred in refusing an injunction.
The plaintiff alleged that he had been employed by Richmond County as superintendent of roads and bridges for more than nine years, and in addition thereto had been warden of the county, in actual charge of all convicts sentenced to the penitentiary to serve their sentences in said county, or such as were transferred thereto by the proper authorities. The resolution adopted by the board of commissioners purported to abolish the position of superintendent *Page 809 
of roads and bridges, without mention of county warden. In his bill of exceptions, the plaintiff alleges in effect that his petition in the trial court was not predicated upon any idea that he was a warden except as "incidental" to his position as superintendent of roads and bridges, and the same construction is placed upon the petition in the brief filed in his behalf. We may thus lay aside all question as to abolishing the office or position of warden, and consider only whether the plaintiff was entitled to an injunction as related to his employment as superintendent of roads and bridges.
The judge filed a written opinion, in which he stated: "The evidence having been heard and the court having reserved its opinion until this day, the court has reached the conclusion from the law and the facts that an injunction should be denied," and then, after discussing the acts of 1933 and 1937, portions of which are quoted in the preceding statement, stated further: "While the plaintiff alleges that the abolition was not in good faith, he fails to prove these allegations, and the court finds from the evidence submitted that the commissioners abolished the position held by the plaintiff in good faith and as an economy measure." The judge placed his decision in part upon the act of 1933, holding that it was not repealed by the act of 1937, but stated further that, "if" the 1937 act is in point of fact in conflict with the act of 1933, then such portions of the later act as are in conflict with the former are unconstitutional (see Code, § 2-401), but he did not hold that there is a conflict. We cannot agree that this amounted to a ruling that any part of the act of 1937 is unconstitutional, so as to bring that question now before this court for determination. Compare Yarbrough v.Georgia Railroad Banking Co., 176 Ga. 780 (168 S.E. 873).
The judge also held that, if the act of 1933 was repealed and the plaintiff came under the act of 1937 as a permanent employee, his position could still be abolished under section 9 of the latter act. By that section it is declared: "Nothing herein contained shall restrict the right of said board to abolish any position held by any permanent employee when such position or office, in its judgment is no longer necessary, provided, however, that if the abolition of a position is resorted to as a subterfuge to discharge such employee, and was not justified, such employee shall have his action therefor as for a breach of contract." We agree with the judge as to the *Page 810 
meaning of this section, and so, if his finding "that the commissioners abolished the position held by the plaintiff in good faith and as an economy measure," was authorized by the evidence, it necessarily follows that he did not err in refusing an injunction. The plaintiff in error contends that the evidence demanded a contrary finding, but we do not think that this contention is sustained by the record.
The plaintiff alleged in effect that the resolution purporting to abolish the position of superintendent of roads and bridges was resorted to as a mere subterfuge to discharge him and was not justified, and upon the hearing he testified to circumstances which may have tended in some degree to support his allegations upon this point. He also introduced in evidence his positively verified petition; but the defendants in their answers specifically denied the allegations as to subterfuge and lack of justification, and the answer of the commissioners alleged affirmatively that the position was abolished as an economy measure. The answers, like the petition, were positively verified, and they were also introduced in evidence. Furthermore, the testimony of Commissioner Mertins tended to support the contention of the defendants; nor was the evidence of Commissioner Miles directly contrary.
It may be mentioned that the plaintiff did not waive discovery, but expressly demanded such, and therefore the answers of the defendants to his interrogatories were matters to be considered by the trial judge. "The answer of a defendant, as to facts within his own knowledge, responsive to the discovery sought, shall be evidence in his favor, and may be rebutted only by two witnesses, or one witness and corroborating circumstances: Provided, discovery shall be expressly prayed for in the plaintiff's petition." Code, § 38-1105.
Considering the evidence as a whole and the rule above quoted as to discovery, we cannot say that the judge's finding upon the evidence was unauthorized. Nor can we sustain the contention of the plaintiff in error that the judgment should be considered as one based solely upon a legal question without a proper exercise of discretion.
There is one other matter that it may not be amiss to mention. In section 10 of the act of 1937, it is provided that "no employee shall be entitled to the benefits of this act who shall not at all times *Page 811 
remain a duly qualified and registered voter of Richmond County." We find no allegation or evidence that the plaintiff was such a voter.
From what has been said, regardless of all other questions, the judge did not err in refusing an interlocutory injunction.
Judgment affirmed. All the Justices concur, except Wyatt, J.,absent because of illness.