NORTHWESTERN MUTUAL LIFE INSURANCE CO. *v.*
SUTTLES, Tax Collector, *et al.*

No. 15427.   May 14, 1946.   Rehearing denied June 12, July 9, 12, 1946.

88

*MacDougald, Troutman & Arkwright,* for plaintiff.

*E. H. Sheats, W. S. Northcutt,* and *Standish Thompson,* for defendants.

SLOAN, Judge. (After stating the foregoing facts.) ■ When this case was previously before the Supreme Court, *Suttles* v. *Northwestern Mutual Life Ins. Co.,* 193 *Ga.* 495 (supra), questions were raised as to taxable situs and whether the insurance company continued to engage in the loan business in Fulton County during the years 1931 to 1937 inclusive. This court held: "2. . . (a). Intangible property of a non-resident may be taxed in this State, consistently with the fourteenth amendment of the United States Constitution and the similar or due-process clause of the Constitution of Georgia, if it is so used as to become an integral part of some local business conducted by him or his agent. (b) Where a non-resident corporation, a life-insurance company, employed a loan agent in Georgia for the purpose of soliciting and submitting applications for loans and making reports concerning applicants and the proffered security, the agent being employed on a salary

basis and having in this State a fixed office or place of business leased in his own name, but the rent of which was paid by the company through reimbursement to him on expense account, and in all negotiations in reference to loans the company dealt with applicants by communications passing through him as its agent, the notes and security deeds though prepared in the home office being sent to him for execution by applicants in this State, and, after their return to the home office and approval there, checks being mailed to him for delivery to applicants here, so that all loan contracts were thus finally executed in Georgia, and where as many as nineteen long term loans were so made during continuous existence of such agency, the company in making such loans was conducting a loan business in Georgia, and thus came within its taxing power, as to property derived from or used in such business. (c) The facts, that all management and control were vested in the officials of the company at its home office, and that the authority of the agent was limited to specific instructions as to each separate loan, do not alter the case. If the company did in fact conduct a loan business in Georgia, it could not deprive the State of its authority to tax by limiting the authority of its agent. (d) Nor does it matter that the company kept no money in Georgia either in the hands of its agent or elsewhere for the purpose of making loans, where there was no effort to tax money, and the only property assessed consisted of *credits* arising from loans made in such business. Under the facts of the case, it is also unimportant that the notes and security deeds were not kept in Georgia. 3. Where nineteen loans that were made in such business were still outstanding and unpaid on January 1, 1931, and at least six of them were renewed or extended, one in each of the years 1931, 1932, 1933, 1935, 1936, 1937, the smallest number outstanding in any of these years being thirteen, during which period (1931-1937) a number of leases were also assigned by borrowers as additional security, and the same agent remained in his same employment as resident loan agent, performing substantially the same service, except as to solicitation, the company continued to be engaged in the loan business in Georgia, subject to the State's taxing power; and this is true although it had made no new loan since 1928, and the agent had not solicited an application for a loan since that time. . . (b) Under the foregoing rulings as applied to the evidence, the credits arising

from such loans had a situs for ad valorem taxation in Fulton County, Georgia, where the loan business was conducted, so that to tax them there would not violate the due-process clause of either the State or the Federal Constitution. The undisputed evidence demanded a finding in favor of the tax."

The same questions relating to taxable situs and whether the company continued to engage in business in Fulton County are presented now by the plaintiff's exceptions to the judgment overruling its last motion for new trial. The evidence introduced on the first trial is set forth in the report of the former decision by this court, *Suttles* v. *Northwestern Mutual Life Ins. Co.*, 193 *Ga.* 495 (supra). While the company undertook to amplify and supplement its evidence on the second trial, the court after carefully examining the same, and comparing the evidence on the first trial, relating to taxable situs and continuing in business, with the evidence introduced on the second trial, now under review, finds there is no substantial difference with respect to these issues.

"A decision by the Supreme Court is controlling upon the judge of the trial court as well as upon the Supreme Court when the case reaches that court a second time. The principle in the decision may be reviewed and overruled in another case between different parties, but as between the parties the decision stands as the law of the case, even though the ruling has been disapproved by the Supreme Court in a case decided before the second appearance of the case in that court." *Western & Atlantic R. Co.* v. *Third National Bank,* 125 *Ga.* 489 (54 S. E. 621); *Southern Bell Telephone &c. Co.* v. *Glawson,* 140 *Ga.* 507 (79 S. E. 136); *Saulsbury* v. *Iverson,* 73 *Ga.* 733. Upon request to review and overrule these cases, the rulings therein are adhered to and the request of the plaintiff in error that they be overruled is denied. However, we need not, and do not, base our present conclusion merely upon the previous decision as the law of the case, but, independently of any such consideration, we reaffirm the decision as a correct statement of the law.

The instant case is distinguished by its facts from the following cases, relied on by the plaintiff: *Suttles* v. *Associated Mortgage Companies,* 193 *Ga.* 78 (17 S. E. 2d, 272); *National Mortgage Corp.* v. *Suttles,* 194 *Ga.* 768 (22 S. E. 2d, 386); *Davis* v. *Metropolitan Life Insurance Co.,* 196 *Ga.* 304 (26 S. E. 2d, 618). As

pointed out in *Suttles* v. *Northwestern Mutual Life Insurance Co.,* 193 *Ga.* 495 (supra), when the present case was previously before this court, the conclusion there reached was in perfect harmony with the decision in *Suttles* v. *Associated Mortgage Companies,* (supra), where the choses in action had passed by transfer from the original holder into the ownership of a non-resident, which did not at any time use them in this State, except for purposes looking to their collection. Substantially the same factual situation existed in *National Mortgage Co.* v. *Suttles,* 194 *Ga.* 768 (supra), and in *Davis* v. *Metropolitan Life Ins. Co.,* 196 *Ga.* 304 (supra), except in the latter case the Metropolitan Company was in a few loans the direct grantee, but it did not at any time have a resident loan agent in this State, as did the Northwestern Mutual.

Grounds 1, 2, and 3 of the motion for new trial are the general grounds. Special grounds 4 to 12 inclusive merely enlarge the general grounds by insisting that under the evidence the mortgage credits were not taxable in Georgia. There is no merit in these grounds for the reason that the evidence would not have authorized a finding that there was no taxable situs in Georgia.

Special grounds 14, 15, 17, 18, 19 and 20 of the motion for new trial complain of the admission of evidence as to transactions by the plaintiff in error in years prior to 1931, it being contended by the plaintiff in error that the question at issue was whether or not the plaintiff in error conducted in Fulton County, Georgia, the business of lending money during the period of 1931 to 1937 inclusive, and that transactions prior thereto had no relevancy or materiality. The record discloses that the mortgage credits here involved, originally came into being in Fulton County, Georgia, prior to 1931, but that the plaintiff in error continued in the business which it had previously initiated, and renewed and extended loans during the tax period of 1931 to 1937 inclusive. The evidence as to transactions of the plaintiff in error in years prior to 1931 was both relevant and material to the issue involved and the trial judge did not err in admitting such evidence over the objection made.

The 16th special ground complains that the court erred in excluding the testimony of the witness Sam T. Swansen offered by the plaintiff in error: "The entire charge of all investments of the company as well as determining from time to time the financial

policy, the employing of agents, the making of contracts and the paying of losses and all matters necessary to the conduct of the business of said company are solely under the control and direction of the officers and trustees of said company in Milwaukee, Wisconsin." The objection made was that it set forth a conclusion. The testimony of this witness is identical with his testimony on the former trial, which testimony on the former trial was read upon this trial, and in construing the testimony of this witness this court said: "As we construe his [Swansen's] evidence, its main purpose was to show clearly or emphasize that management and control in reference to all matters were vested solely in the officers of the company in Milwaukee, and were at all times exercised exclusively by them." The plaintiff in error contends that the exclusion of this evidence was prejudicial and hurtful in that the evidence not only tended to refute the defendants' contention that the credits did so arise (in Fulton County), but to establish movant's contention that the credits arose out of business by it at its home office and legal domicile in Milwaukee, Wisconsin. The exclusion of this testimony was not harmful to the plaintiff in error as this court also held in *Suttles* v. *Northwestern Mutual Life Ins. Co.,* 193 *Ga.* 495 (2c) (supra) : "The facts, that all management and control were vested in the officials of the company at its home office, and that the authority of the agent was limited to specific instructions as to each separate loan, do not alter the case. If the company did in fact conduct a loan business in Georgia, it could not deprive the State of its authority to tax by limiting the authority of its agent." The testimony if admitted would not have authorized a different result and its exclusion, if error, was harmless. *Merck* v. *American Freehold Land Mortgage Co.,* 79 *Ga.* 213 (7 S. E. 265).

The 21st special ground complains of the court's ruling in directing a verdict for the defendants in error and insists that the evidence presents questions of fact for determination by the jury. The evidence would not have authorized a finding in the plaintiff's favor on the issue as to taxability and accordingly there is no merit in this ground, so far as it complains of the direction of a verdict for the defendants and against the plaintiff with respect to the contention that the credits were not taxable in Fulton County.

Upon the remanding of this case to the trial court for a new trial (*Suttles* v. *Northwestern Mutual Life Ins. Co.,* 193 *Ga.* 495),

and before a second trial, the plaintiff filed a first amendment to the original petition, which was, on June 5, 1942, allowed subject to objections; said amendment alleging, in paragraph 21, subparagraphs (a) to (f), that the assessments involved in this litigation were void for the reason that they were made at a time when the defendants had no lawful power, authority, or jurisdiction to make the same, as they were made after December 27, 1937, the day on which the Intangibles Tax Act became law, and at a time when the defendant was entitled to the benefit of the provisions contained in that section of the act (Ga. L. 1937-8, Ex. Sess., pp. 156, 169) codified as § 92-157 (Ann. Supp.), the benefit of which was under the terms of said act denied only where the assessment had been made prior to December 27, 1937.

The plaintiff further alleged that the defendants were acting under authority of the provisions of the Georgia Code, §§ 92-6910, 92-6911, and 92-6913 as amended by the act of March 31, 1937 (Ga. L. 1937, pp. 517-524); and that said law does not provide for notice and hearing to the taxpayer, except for the current year, and therefore violates the due-process clause of the Constitution of Georgia and the equal-protection provision of the 14th Amendment of the Federal Constitution. No reference to this question was made in the argument or in the brief for the plaintiff in error, and it is therefore considered as abandoned.

The plaintiff (in paragraphs 34-51) alleged that the assessments against it were illegal and void, for that such assessments were based upon 30 percent of the market value of the credits involved, and covered the entire period of the statute of limitations (1931-1937), whereas the defendants customarily and systematically followed the practice of accepting returns from taxpayers generally of intangible property during the years 1935, 1936, and 1937 on the basis of 5 percent of the value of cash or money in the bank, 15 percent of the cash market value of stocks and bonds, and 25 percent of the cash market value of mortgages; that such assessments were confined to the years 1935 to 1937, notwithstanding the fact that owners of such property may have held the same for the entire seven-year period of the statute of limitations; the plaintiff's entire assessment for the period totaling 210 percent of the cash market value of the intangibles, and assessments made against others for the three-year period, totaled in the case of cash 15 percent of its

value, stocks and bonds 45 percent of the cash market value, and mortgages 75 percent of such value; that this constituted a discrimination against the plaintiff, was not an impartial administration of the tax law, and was in violation of the equal-protection clauses of the Federal and State Constitutions. The plaintiff also alleged that there is no difference in law and in fact, for ad valorem tax purposes, between cash, stocks and bonds, and mortgages, and that it is entitled to have its property taxed upon the same basis. The plaintiff further alleged that the defendants had no right to make an assessment, but if they did, all that could be lawfully claimed would be no tax for 1931, 1932, 1933, and 1934, and one-sixth of the tax claimed for the years 1935, 1936, and 1937, besides interest.

The demurrer to this amendment was in part upon the grounds: that the Intangibles Tax Act (Code, Ann. Supp., § 92-157) is unconstitutional and void as violative of the equal-protection and the uniformity-of-taxation requirement of the Constitution, as well as art. IV, sec. 1, paragraph 1, denying the right of the General Assembly to limit, grant, or give the right of taxation; that the facts alleged are insufficient to constitute illegal discrimination; that the liability for taxes must be determined separately for each year; and further that the allegations do not entitle the plaintiff to the relief sought, and constitute no defense to the collection of the tax. The court sustained the demurrer and struck this amendment, but granted leave to amend so as to claim reduction to an assessment based on 25 percent of market value.

In the instant case the power of the county tax assessors to assess for ad valorem taxes for the year 1937 and previous years was in no sense dependent upon or affected by the Intangibles Tax Act of 1937 (Ga. L. 1937-38, Ex. Sess., pp. 156, 159).

"The clause of the Fourteenth Amendment especially invoked is that which prohibits a State denying to any citizen the equal protection of the laws. What satisfies this equality has not been and probably never can be precisely defined. Generally it has been said that it 'only requires the same means and methods to be applied impartially to all the constituents of a class so that the law shall operate equally and uniformly upon all persons in similar circumstances.' Kentucky Railroad Tax cases, 115 U. S. 321, 337 (6 Sup. Ct. 57, 29 L. ed. 414)." Magoun v. Illinois Trust & Sav-

ings Bank, 170 U. S. 283, 293 (18 Sup. Ct. 594, 42 L. ed. 1037).

If the plaintiff may claim discrimination because voluntary tax-payers were afforded different treatment, in that the taxing authorities accepted their returns of mortgage credit at 25 percent of the market value, while assessing the plaintiff at 30 percent of the market value of such mortgage credit, the plaintiff would only be entitled to have its assessment reduced to 25 percent of the market value of said mortgage credit, the percentage that the defendants accepted from the voluntary taxpayer for the same kind of property.

The plaintiff sought by this amendment, not to have its assessment reduced to 25 percent of the market value of the mortgage credits as accepted from voluntary taxpayers, but to have its assessment reduced to 5 percent of the market value, that being the percentage of value permitted taxpayers to fix in their returns of cash or money in banks, a different class of property. Compare *Montgomery* v. *Suttles,* 191 *Ga.* 781 (1a) (13 S. E. 2d, 781).

The court did not err in sustaining the demurrer to the first amendment of June 5, 1942, so far as the amendment related to matters other than · actual discrimination by the defendants. If there was error with respect to that issue, the error was later cured, as will be shown presently in this opinion.

The second amendment of the plaintiff, filed March 27, 1943, claims certain benefits under the Intangibles Tax Act (Code, Ann. Supp., § 92-157).

The plaintiff contended that, having made a true return of its property in compliance with the requirements of the Intangibles Tax Act, all liability for ad valorem taxes on such intangibles had been extinguished under the provisions of § 92-157. The plaintiff further contended that the defendants believed and acted in accordance with such belief, that under § 92-157 they had a right to deny the benefits of said section to anyone whom they had elected to assess between December 27, 1937, the date the Intangibles Tax Act was passed, and January 1, 1938, and it was only those not so assessed during said interval that would be relieved of liability for past-due ad valorem taxes; and that such a construction of § 92-157 and the assessments made in pursuance thereof were violative of the equal-protection and due-process clauses of the Federal and State Constitutions.

In this second amendment the plaintiff further contended that, if the part of § 92-157 reading, "on which no return or assessment has been made or on which no litigation has been instituted either by the taxing authorities or the taxpayer prior to January 1, 1938," was capable of such construction, or set forth a classification as contended by the defendants, the said clause and classification set forth therein are void as violative of the due-process and equal-protection clauses of the Federal and State Constitutions; and that this clause could be stricken from the act without otherwise affecting it, under the separability clause as contained in the Code (Ann. Supp.), § 92-159 (Ga. L. 1937-38, Ex. Sess., pp. 156, 169; 1941, pp. 223, 225). The court sustained a demurrer to the second amendment and the plaintiff excepted to this ruling.

The above attack on the intangibles tax statute complaining only that if it was capable of the construction placed upon it by the taxing authorities it would be violative of the equal-protection and due-process clauses of the Federal and State Constitutions, is not sufficient to raise any question as to the constitutionality of the statute (*Loftin* v. *Southern Security Co.*, 162 *Ga.* 730 (2) 134 S. E. 760; *Gormley* v. *Searcy*, 179 *Ga.* 389, 397 (2), 175 S. E. 913; *Morgan* v. *Mertins*, 198 *Ga.* 800, 809, 33 S. E. 2d, 156), but only raises questions as to the correctness of the defendants' construction of the statute. We agree with the statement of the trial court, as quoted infra, that any such discrimination should be asserted, independently of and without reference to the Intangibles Tax Act. In other words whether there was administrative discrimination would depend not on what the taxing authorities thought of that statute which was not then effective, but on whether they intentionally and systematically discriminated against the plaintiff and in favor of others in the actual administration of the existing tax laws.

Subject to the same qualifications that we made in reference to the demurrer to the first amendment, we hold that the court did not err in sustaining the demurrer to the second amendment of the plaintiff, filed March 27, 1943.

The plaintiff offered third and fourth amendments. These amendments contained substantially the same allegations as the previous amendments, as to administrative discrimination. Both amendments were stricken on demurrer and the plaintiff excepted to the orders striking them.

In the order sustaining the demurrer to the fourth amendment, the court provided that the plaintiff should have the right "to plead by amendment any systematic and intentional discrimination practiced at any time by the tax authorities of Fulton County, in accordance with the standards of equality specified in the previous orders on demurrers in this case dated April 29, 1943. It is the opinion of this court that such discrimination if pleaded must be asserted, independently of and without reference to said Intangible Tax Classification Act." While the plaintiff filed exceptions pendente lite to this order, it nevertheless yielded to the ruling and filed a fifth amendment, alleging systematic and intentional discrimination, in that the defendants assessed the plaintiff and a few others during the period from December 27, 1937, to January 1, 1938, with the intention of not thereafter assessing the great majority of others similarly situated, and pursuant thereto failing and refusing to assess the great majority of others similarly situated, in violation of the equal-protection and due-process clauses of the Federal and State Constitutions.

The plaintiff, having declined to rely upon its exceptions to the rulings of the court upon the proffered amendments, at least in so far as the final amendment covers or attempts to cover the same issues with respect to discrimination which the plaintiff sought to raise in former amendments, and having yielded to the rulings by pleading the discrimination set out in the fifth amendment, which was allowed over objection, will not now be heard to complain of the court's rulings on the previous amendments in so far as the same issues are concerned. Where a plaintiff is not satisfied with such a ruling, he should stand upon his original amendment as drawn, refuse to amend further and except to that judgment. *Rivers* v. *Key,* 189 *Ga.* 832 (7 S. E. 2d, 732) ; *Smith* v. *Bugg,* 35 *Ga. App.* 317 (133 S. E. 49).

Under this rule the plaintiff clearly waived exceptions to the disallowance of the 2d, 3d, and 4th amendments as related to alleged administrative discrimination, and there was no error as to other matters. Whether the same rule as to waiver would apply to the order striking the first amendment, and even assuming that the allegations of the first amendment as to administrative discrimination were sufficient to withstand the demurrer interposed thereto, we think any possible error in sustaining the demurrer was fully

cured by the fact that the plaintiff on the trial was permitted to and did introduce evidence, the latitude of which was apparently just as wide as it would have been if all the amendments had been allowed. The plaintiff was permitted without objection to introduce evidence showing that the taxing authorities for a part of the period in question accepted voluntary returns of intangibles on the following basis of assessment: cash and money in banks at 5 percent of its value; taxable stocks and bonds at 15 percent of the market value; mortgages at 25 percent; also that they accepted some voluntary returns for the years 1935, 1936, and 1937, without making assessments for prior years. If the court had not allowed the fifth amendment the plaintiff would not have had any pleading upon which to admit the above evidence, but this amendment having been allowed, it was permitted to inquire, and did by the foregoing and other evidence as shown in the statement of facts, actually inquire, into the question as to whether there had been any kind of administrative discrimination against the plaintiff, and it apparently did so just as fully and completely as it would or could have done if none of the amendments had been stricken.

Where the court, on a demurrer by the defendant, strikes one of the plaintiff's amendments, such order, even if erroneous, will not result in the reversal of a final judgment in favor of the defendant, where as here, it affirmatively appears that the plaintiff was given and exercised full opportunity to introduce evidence in attempted support of the allegations of fact in the amendment so stricken, and the evidence as a whole (see division 3 infra) was insufficient to sustain such allegations. *Hudgins Contracting Co.* v. *Redmond,* 178 *Ga.* 317 (4) (173 S. E. 135); *Cozart* v. *Johnson,* 181 *Ga.* 337 (2) (182 S. E. 502); *Ellis* v. *First National Bank of Atlanta,* 182 *Ga.* 641 (4) (186 S. E. 813); *Harris* v. *Neuman,* 183 *Ga.* 398 (3) (188 S. E. 689); *Fidelity & Deposit Co.* v. *Norwood,* 38 *Ga. App.* 534 (1c) (144 S. E. 387).

In view of what has been said, even if the court erred in sustaining the demurrer to the first amendment in so far as it sought to allege administrative discrimination, the ruling does not require a reversal. We therefore conclude that there is no merit in any of the exceptions complaining of orders striking on demurrer the plaintiff's first, second, third and fourth amendments.

As we view the case, no decision as to the constitutionality of any part of the Intangibles Tax Act is necessary, and none is made.

*McGill* v. *Osborne,* 131 *Ga.* 541 (2) (62 S. E. 811) ; *Georgia Power Co.* v. *Decatur,* 173 *Ga.* 219 (3) (159 S. E. 863).

■ We now consider the motion for a new trial as related to discrimination. As above stated the plaintiff's fifth amendment was allowed by the court. The substance of this amendment has been stated in the preceding division.

The 13th special ground, evidently based on the fifth amendment, complains that the verdict is contrary to law, and that the assessment is void because, as the plaintiff in error (plaintiff) contends, "the evidence conclusively established that the said assessment was a deliberate and intentional discrimination against movant [plaintiff in error] by reason of the fact that the assessment was made pursuant to a plan and policy adopted by the taxing authorities of Fulton County, Georgia, on December 27, 1937, to assess those intangibles embraced within the Intangibles Tax Act of December 27, 1937, for unpaid ad valorem taxes for the years 1931 through 1937 during the interval only between December 27th and December 31, 1937, but to not thereafter assess such classified intangibles even though the owners of such property were owing ad valorem taxes thereon for the year 1937 and prior years within the statute of limitation, contrary to the equal-protection clause of the Fourteenth Amendment to the United States Constitution and Article I, section 1, paragraph 3 of the Constitution of the State of Georgia."

The good faith of taxing officials and the validity of their actions are presumed, and when assailed the burden of proof is upon the complaining party. Sunday Lake Iron Co. *v.* Wakefield, 247 U. S. 350 (38 Sup. Ct. 495, 62 L. ed. 1154), cited and applied in *Hardin* v. *Reynolds,* 189 *Ga.* 534, 545 (6 S. E. 2d, 328) ; *Georgia Railroad & Banking Co.* v. *Wright,* 125 *Ga.* 589, 604-606 (54 S. E. 52).

The testimony on this issue, as set forth in the statement of facts, wholly fails to establish any deliberate or intentional plan or purpose of the defendants to assess some and not assess others, or to assess some for a short period and others for a longer period.

While the testimony does show that many more taxpayers made returns under the Intangibles Tax Act of 1937 than those who made returns or were assessed under the former law, the record wholly fails to establish that this failure to assess was the result of any intentional or systematic plan or policy of the defendants, but

on the contrary shows that they diligently and conscientiously undertook to assess all owners of intangibles known to them. To establish an unlawful discrimination, it is not enough to show that the tax officials have merely made a mistake, or have not been diligent in seeking out those subject to tax, but there must be a clear and affirmative showing that the difference is an intentional discrimination and one adopted as a practice. Chicago Great Western Railway Co. *v.* Kendall, 266 U. S. 94 (45 Sup. Ct. 55, 69 L. ed. 183).

It is undisputed in the record that the reason for the failure to utilize the list of intangibles taxpayers furnished by the State Department of Revenue to the county authorities was the honest belief that they had no right to do so, and the belief that they "had completely covered the intangible picture."

It also becomes necessary in the view we have taken as to the several amendments, to determine whether the judge erred in directing the verdict with respect to administrative discrimination as alleged in any of the plaintiff's amendments. Under the above principles of law, the evidence would not have authorized a finding in the plaintiff's favor upon any issue as to such alleged discrimination, and accordingly there is no merit in the general grounds as related to such issue, nor in the 21st special ground so far as it complains of the direction of a verdict for the defendants and against the plaintiff with respect to alleged administrative discrimination, as set forth in any of the five amendments.

Considering the evidence as a whole, with all reasonable deductions therefrom, it is manifest that there was but one finding which can be legally supported, and that was a finding in favor of the defendants in error; and therefore the judge of the trial court did not err in directing the verdict accordingly (Code, § 110-104), or in overruling the plaintiff's motion for a new trial.

The opinion as originally delivered has been revised on motion for rehearing, to meet certain criticisms contained in such motion which the court considered meritorious to the extent of requiring alterations in the opinion, but not as requiring a different judgment. See Code, § 24-4544 (f) (Ann. Supp.)

*Judgment affirmed. Bell, Chief Justice, Jenkins, Presiding Justice, Atkinson, Wyatt and Candler, Justices, and Judges Sloan and Hawkins concur. Duckworth and Head, Justices, disqualified.*

**108**

SLOAN, Judge. The plaintiff in error in its second motion for a rehearing is insisting for the first time that this court, on the evidence in the record, should reduce the assessments from 30 to 25 percent of the value of the credits, under the rule announced in the case of *Montgomery* v. *Suttles,* 191 *Ga.* 781. The trial court expressly invited the plaintiff in error to avail itself of this right and it declined to do so, and in the motion for a rehearing it is said that "had the plaintiff in error done so, this would have been to renounce the claim of discrimination based upon the length of time covered by the assessments, the imposition of interest and penalties, which plaintiff in error declined to do." We leave the plaintiff in error in the position it voluntarily assumed.

The other questions discussed in this motion for a rehearing have already been sufficiently dealt with in the opinion.

*Motion for rehearing denied.*